749 A.2d 375 (2000)
330 N.J. Super. 197
Edward WILLIAMS, Plaintiff-Appellant,
v.
DEPARTMENT OF CORRECTIONS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 2000.
Decided April 18, 2000.
*376 Edward Williams, plaintiff-appellant pro se.
*377 John J. Farmer, Jr., Attorney General, for defendant-respondent (Mary C. Jacobson, Assistant Attorney General, of counsel; Adriana M. Calderon, Deputy Attorney General, on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Edward Williams, an inmate at Bayside State Prison, appeals from three separate final decisions issued by the Department of Corrections (the Department) upholding the imposition of prison discipline. We affirm in part, and reverse in part.
On April 10, 1998, at approximately 8:15 p.m., while patrolling the minimum complex grounds of Southern State Correctional Facility (SSCF), Corrections Officer Erricson smelled what he perceived to be a strong cannabis odor coming from the laundry area. He proceeded to investigate. He looked behind the laundry area and found Williams and two other inmates, David Hurst and Stephen Jones, sitting behind a fuel tank. The area in which the inmates were found is an unauthorized area after dark.
According to Ericcson, as he approached the inmates, they attempted to leave. He observed Jones drop what he suspected to be a partially smoked marijuana cigarette. As a result, Ericcson charged Williams and Hurst with being in an unauthorized area, a violation of N.J.A.C. 10A:4-4.1(a)*.402.[1] All three inmates were also ordered to provide urine samples.
At his disciplinary hearing regarding the charge of being in an unauthorized area, Williams admitted being in the area but denied being aware that it was off limits after dark. The hearing officer found that since Williams had been in minimum custody status for six months, he should have known about the area restriction. Moreover, he concluded that the area is clearly marked out of bounds, and inmates are notified of this during their orientation. The hearing officer sanctioned Williams to five days detention, and referred him to the Institutional Classification Committee for its review of Williams's custody status. Williams appealed that determination to the Superintendent of SSCF, resulting in a minor modification of the sanctions imposed. Williams appeals that determination to this court.
The laboratory test of Williams' urine sample concluded that he tested positive for cannabinoids. Accordingly, Williams was also charged with violating N.J.A.C. 10A:4-4.1(a)*.204, use of any narcotic paraphernalia, drugs or intoxicants not prescribed for the individual by the medical or dental staff. SSCF's records indicate Williams entered a plea of guilty to the charge and asked for leniency regarding his sanctions. The hearing officer found defendant guilty, and sanctioned him with 10 days detention, 180 days administrative segregation, and 270 days loss of commutation time. Again, Williams unsuccessfully appealed that determination to the Superintendent of SSCF who found that the hearing officer's decision was based upon substantial evidence. He upheld the sanctions imposed. Williams also appeals that determination to this court.
Finally, based upon an internal affairs investigation at SSCF, Williams was charged with attempting to possess or introduce narcotic paraphernalia, drugs or intoxicants not prescribed for the inmate by the medical or dental staff, in violation of N.J.A.C. 10A:4-4.1(a)*.803/*.203. The evidence presented to the hearing officer consisted of the findings of the internal affairs investigation. According to the Department, these documents were classified as confidential and could not be provided *378 to Williams because they involved a continuing confidential investigation. Consequently, although the documents have been submitted to us on a confidential basis, neither Williams nor anyone on his behalf has had the opportunity to see them. The hearing officer reviewed the documents, found the evidence credible, and therefore, found Williams guilty. The hearing officer sanctioned Williams to 365 days loss of commutation time, 270 days administrative segregation, and 90 days of urine monitoring. Moreover, the sentences imposed for the violation of *803/*203 and *204 were deemed to run consecutively with one another. Williams appealed the hearing officer's disciplinary decision to the Superintendent of SSCF who found the decision was based upon substantial evidence, and upheld the sanctions imposed. Williams appeals that decision to this court, as well.
On this appeal, Williams raises the following arguments: (1) regarding the charge of being in an unauthorized area, the hearing officer committed plain error by relying on non-factual information in determining his guilt and "supplying false information into the records"; (2) regarding the charge of use of non-prescribed drugs, "new evidence with respect to the urine results of co-defendants further conclude that the ordering of said defendant to void urinalysis was without sufficient probable cause"; and (3) regarding the charge of attempting to possess or introduce non-prescribed narcotic drugs, the hearing officer violated Williams's rights to due process by failing to comply with "N.J.A.C. pertaining to confidential information".
We have carefully considered the record, the briefs filed, and the applicable law and conclude that Williams' first and second contentions are clearly without merit. The Department's decisions regarding those contentions are supported by sufficient credible evidence on the record as a whole. See R. 2:11-3(e)(1)(D); Henry v. Rahway State Prison, 81 N.J. 571, 579, 410 A.2d 686 (1980). We therefore affirm the findings on those charges, as well as the sanctions imposed.
We consider defendant's third contention to be a challenge to the right of the Department to impose administrative sanctions upon him based upon the contents of a confidential report which has not been supplied to him. The challenge is directed to the charge regarding "the attempt to possess or introduce contraband" following the internal investigation. We recognize that prison disciplinary hearings are not criminal prosecutions and, accordingly, the full panoply of constitutional rights due a defendant in such proceedings does not apply. Avant v. Clifford, 67 N.J. 496, 522, 341 A.2d 629 (1975). Although prisoners are not entitled to the same level of due process rights as free persons, they are not entirely stripped of constitutional protections once they enter the prison. McDonald v. Pinchak, 139 N.J. 188, 194, 652 A.2d 700 (1995). However, prisoners are not entitled to the same due process rights as those guaranteed persons charged with the commission of a crime. Ibid. Accordingly, constitutional rights may be abridged to the extent necessary to accommodate the institutional needs and objectives of prisons. Ibid. Nevertheless, prisoners are entitled to procedural fairness, however informal, in the imposition of prison discipline. Ibid. Among these rights is a limited right to confront and cross-examine adverse witnesses. Id. at 529-30, 341 A.2d 629; N.J.A.C. 10A:4-9.14. Moreover, the inmate is entitled to a written statement of the evidence relied upon and the reasons for the sanctions imposed. Avant, supra, 67 N.J. at 533, 341 A.2d 629; N.J.A.C. 10A:4-9.15.
The special procedural due process requirements articulated in Avant, have been recognized by the Department in the promulgation of a comprehensive set of regulations dealing with inmate discipline, N.J.A.C. 10A:4-1.1 to -11.9. Our Supreme Court has held that the current regulations strike the proper balance between *379 the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates. McDonald v. Pinchak, supra, 139 N.J. at 202, 652 A.2d 700.
The Department has supplied us with an eleven-page "confidential appendix" which constitutes its investigation that led to the charge of attempting to import a controlled dangerous substance into the institution. We think it appropriate (and not a breach of confidence) to note that the report includes an opinion of a senior investigator, which, in our view, constitutes a bare net opinion concluding that Williams was attempting to introduce controlled dangerous substances to SSCF. Significantly, the report is silent as to how the senior investigator reached that conclusion.
We recognize that our scope of review of an administrative determination is limited. We must determine "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record', considering `the proofs as a whole', with due regard to the opportunity of the one who heard the witnesses to judge of their credibility * * * and * * * with due regard to the agency's expertise where such expertise is a pertinent factor". Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93, 312 A.2d 497 (1973) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965)). However, our application of that standard "requires far more than a perfunctory review". Mayflower Securities, supra, 64 N.J. at 93, 312 A.2d 497. We are constrained to engage in a "careful and principled consideration of the agency record and findings". Ibid. While our scope of review is limited, we cannot be relegated to a mere rubber-stamp of agency action. State-Operated School District of the City of Newark v. Gaines, 309 N.J.Super. 327, 332, 707 A.2d 165 (App. Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998); Chou v. Rutgers, 283 N.J.Super. 524, 539, 662 A.2d 986 (App.Div.1995), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). Here, were we to accept the naked conclusion of the senior investigator, we would merely be rubber-stamping the Department's opinion, for it provides no real guidance to the conclusion it reached. That we cannot, and will not, do. Accordingly, we reverse the finding of guilt for attempting to import a controlled dangerous substance into SSCF.
Although not necessary for our opinion in light of our conclusion that the confidential report includes no supporting facts, we also comment briefly regarding the Department's contention that there is a need for confidentiality of its investigative methods or techniques which precludes divulging the contents of the confidential investigation to Williams. We emphasize that we are not dealing with a need for limitation upon the right of confrontation or cross-examination in order to protect the safety or well-being of a confidential informant. In such a situation, we have little doubt that the need to protect confidentiality, when properly invoked, trumps a prisoner's right of confrontation and cross-examination when those rights would be "unduly hazardous to correctional facility safety or goals". McDonald v. Pinchak, supra, 139 N.J. at 197, 652 A.2d 700; N.J.A.C. 10A:4-9.14(b). Here, there is not the slightest hint that anyone's safety would be jeopardized by disclosure of the internal affairs report. Rather, the Department asserts that its ability to detect attempts or conspiracies to import controlled dangerous substances into an institution may be jeopardized by disclosure.
We recognize the Department's concern and its significant interest in eliminating the importation of controlled dangerous substances in its penal institutions. However, we also recognize that an inmate must be afforded a reasonable opportunity to defend a disciplinary charge. A reasonable accommodation must be made between the Department's significant *380 interests and the inmate's basic rights. A summary should be made of the report in order to accommodate both the Department and the inmate, accompanied by a sealing of such material as genuinely requires confidentiality, for disclosure only on further administrative or judicial appellate review.
In cases where the sanction contemplated or imposed is the forfeiture of commutation time, which lengthens the time the inmate serves on his or her sentence, it is difficult to envision any legitimate interest that, in the light of the need for due process, would ever justify a total non-disclosure. Wakefield v. Pinchak, 289 N.J.Super. 566, 571, 674 A.2d 621 (App.Div.1996). We need not decide today whether, and under what circumstances, a need for protection of confidential methods of investigation would outweigh the right of an inmate to a specification of the charge against him so that he can adequately prepare a defense where loss of commutation credits is involved. If that situation is presented, the Department may have to choose between maintaining the confidentiality of its methods of investigation for preventative purposes and not prosecuting. On the other hand, if a sanction of lesser significance than loss of commutation time is contemplated or imposed, the Department's interest in maintaining the confidentiality of its investigative technique may outweigh, and trump, the inmate's right to disclosure.
Affirmed in part, and reversed in part.
NOTES
[1] Jones was charged with possession of narcotic paraphernalia, a violation of N.J.A.C. 10A:4-4.1(a)*.203.