867 A.2d 1232

KEVIN JOHNSON, PETITIONER–APPELLANT, v. DEPARTMENT OF CORRECTIONS, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 4, 2005—Decided February 28, 2005.

Before Judges STERN, S.L. REISNER and GRAVES.

*Kevin Johnson,* appellant pro se.

*Peter C. Harvey,* Attorney General, attorney for respondent (*Michael J. Haas,* Assistant Attorney General, of counsel; *Lisa A. Puglisi,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GRAVES, J.A.D.

Kevin Johnson, an inmate at East Jersey State Prison, appeals from a Final Administrative Decision of the Department of Corrections finding him guilty of "possession or introduction of a weapon, such as, but not limited to, a sharpened instrument, knife or unauthorized tool," in violation of *N.J.A.C.* 10A:4-4.1(a)*.202. The hearing officer imposed sanctions of fifteen days detention, 180 days administrative segregation, 180 days loss of commutation time, and confiscation of the weapon. Johnson filed an administrative appeal and on February 6, 2004, Assistant Superintendent Thomas Power upheld the guilty finding and sanctions. We now reverse and remand for reconsideration in light of this opinion.

On January 29, 2004, while on duty at East Jersey State Prison, Senior Corrections Officer Valentino heard a loud "thud." He looked to his left and saw inmate Hayes walking away from inmate Nance's bed area toward Johnson's bed area. Hayes walked over to his own bed area, picked up a cigarette, and walked back down the tier. Officer Valentino then looked to his left again, and he saw Nance lying on the floor by the bathroom. Officer Valentino called for supervisory backup and when Lieutenant Cifelli arrived, he told Officer Valentino to search Johnson's bed area. Upon searching Johnson's unlocked footlocker, Officer Valentino found "a can of mackerel in a white sock tied in a knot." Based on the weapon being found in his footlocker, Johnson was charged with a disciplinary infraction.

At his disciplinary hearing on February 2, 2004, Johnson maintained he was not in his area at the time of the incident because he was "making prayer," and therefore, he had no knowledge of a weapon being in his footlocker. Counsel substitute stated that inmate Hayes admitted to putting the weapon in Johnson's unlocked footlocker, and "Johnson had no reason to believe it was there." The victim of the assault, inmate Nance, did not indicate that Johnson was involved in his assault, and five other inmates submitted letters indicating they were attending morning prayer with Johnson at or about the time of the incident.

Based on information provided by a confidential informant (CI), the hearing officer determined there was "substantial evidence that [Johnson] was involved in the assault and had knowledge of the weapon." Paragraph 18 of the adjudication form, entitled "Summary of Evidence Relied on to Reach Decision," reads as follows:

> Johnson is charged with possession of a weapon, a can in a sock found in his locker. He denies knowledge of the item. Inmates do have the option of locking their lockers. The statement of the informant shows Johnson was involved in the incident. While inmate Hayes stated at his hearing Johnson had nothing to do with it, he did not do so until confronted with all the evidence and may have been trying to minimize the number of inmates found guilty of the offense. Hayes did not make the statement until six days after the incident. Johnson states he was in his area at the time following the incident, while the weapon was there. There is substantial evidence that he was involved in the assault and had knowledge of the weapon. It is not shown that Johnson's witnesses would be aware of the contents of his locker.

Johnson now makes the following arguments:

*POINT ONE*

APPELLANT JOHNSON WAS DENIED DUE PROCESS AND FAIRNESS WHEN THE HEARING OFFICER ARBITRARILY AND CAPRICIOUSLY FOUND HIM GUILTY OF POSSESSING A WEAPON THAT ANOTHER INMATE ADMITTED TO PUTTING IN HIS FOOTLOCKER.

*POINT TWO*

APPELLANT JOHNSON WAS DENIED DUE PROCESS AND FAIRNESS WHEN THE HEARING OFFICER FAILED TO MAKE AN INDEPENDENT EVALUATION OF CONFIDENTIAL INFORMATION RELIED UPON IN HIS DETERMINATION OF GUILT.

*POINT THREE*

APPELLANT JOHNSON WAS DENIED DUE PROCESS AND FAIRNESS WHEN THE HEARING OFFICER FAILED TO INDICATE HIS REASON FOR BELIEVING TESTIMONY OF AN INMATE CONFIDENTIAL INFOR-MANT AND DISBELIEVING TESTIMONY OF THE REPORTING OFFICER AND THE INMATE WHO ADMITTED PUTTING THE WEAPON IN THE APPELLANT'S FOOTLOCKER.

*N.J.A.C.* 10A:4–9.15(b) establishes a balance between the need to protect CI's from retaliation and the potential unfairness resulting from the concealment of information relied upon to establish an inmate's guilt. *Fisher v. Hundley,* 240 *N.J.Super.* 156, 158, 572 *A.*2d 1174 (App.Div.1990). This regulation requires a

written statement summarizing the hearing officer's basis for relying on confidential information:

> Evidence relied upon in making a determination shall be specified on the Adjudication of Disciplinary Report form.
>
> 1. In any case in which the Disciplinary Hearing Officer or Adjustment Committee's decision of guilt is based on evidence which includes confidential information, adjudication shall contain:
>
> i. A concise summary of the facts on which the Disciplinary Hearing Officer or Adjustment Committee concluded that the informant was creditable or his or her information reliable; and
>
> ii. The informant's statement (either in writing or as reported) in language that is factual rather than a conclusion, and based on the informant's personal knowledge of the matters contained in such statement.
>
> 2. The Disciplinary Hearing Officer or Adjustment Committee is not permitted to disclose the identity of the informant.
>
> [*N.J.A.C.* 10A:4–9.15(b).]

In this case, the hearing officer's statement reads as follows:

> The confidential information is on document C–1 on file at the SID [Special Investigations Division] office. This report contains information that may aid in determining the informant's identity.
>
> This informant is considered reliable and credible as the information is of first hand nature and the information is supported by the other evidence involved in this case. The identity of the informant is kept confidential to protect him from retaliation by those in the inmate population who would use violence to discourage cooperation with the authorities.
>
> The informant informed the SID Investigator that he had witnessed inmate Johnson walking back and forth in front of inmate Nance's area as if he was scoping out the area, and he also witnessed inmate Dadon standing in front of the officer's area as a lookout prior to the assault on inmate Nance. The CI stated that he witnessed inmate Hayes swing a white object at inmate Nance hitting him with it and then inmate Hayes proceeded to quickly walk away from the scene. The CI also stated that inmate Hayes had an argument with inmate Nance concerning "snitch" allegations made by Hayes towards Nance several days prior to the assault on Nance.

The information provided by the CI was the only evidence linking Johnson to the assault on Nance, and apparently the hearing officer reasoned that if Johnson was involved in the assault, then Johnson had knowledge of the weapon found inside his footlocker. Given the requirements of *N.J.A.C.* 10A:4–9.15(b)(1), and the importance of the information provided by the

CI, it was incumbent upon the hearing officer to ascertain whether the confidential information was accurate and reliable.

■ Although an effort was made to establish that the CI was credible and his information was reliable, that effort fell short of its goal. There was no indication that the CI had previously provided reliable information, and the fact that the CI claimed to have first-hand knowledge did not automatically make him a credible and reliable witness. Furthermore, the accuracy of the CI's statement is called into question, at least to some extent, by Officer Valentino who did not indicate in his written report that either Johnson or Dadon were observed to be in the area where the assault occurred, and there is nothing in Officer Valentino's report to corroborate that Dadon was "standing in front of the officer's area," as alleged by the CI. The hearing officer's evaluation of the evidence, including the credibility of the witnesses and the reliability of their statements, was particularly important in a case such as this where the CI's allegations were critical to the adjudication but were uncorroborated by any independent evidence. Moreover, the hearing officer did not explain why he considered the information furnished by the CI to be more credible and worthy of belief than the statements provided by Johnson, inmate Hayes, Officer Valentino, and Johnson's alibi witnesses. In these circumstances, we reverse the adjudication.

■ *N.J.A.C.* 10A:4–9.15(a) requires that "[a] finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." *See also Avant v. Clifford,* 67 *N.J.* 496, 530, 341 *A.*2d 629 (1975) (requiring that there be substantial evidence to support an inmate disciplinary sanction). In reviewing an administrative decision, our appellate role is limited. We cannot substitute our judgment for that of the agency where its findings are supported by substantial credible evidence in the record. *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980).

■ We recognize the deference to which a decision of an administrative agency is entitled, and we do not require the same level of detail in prison disciplinary decisions as in some other matters. *Blackwell v. Dep't. of Corr.,* 348 *N.J.Super.* 117, 123, 791 *A.*2d 310 (App.Div.2002). Our appellate obligation, however, " 'requires far more than a perfunctory review.' We are constrained to engage in a 'careful and principled consideration of the agency record and findings.' " *Williams v. Dep't. of Corr.,* 330 *N.J.Super.* 197, 203–04, 749 *A.*2d 375 (App.Div.2000) (quoting *Mayflower Sec. v. Bureau of Sec.,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973)).

After carefully reviewing the record, we conclude that the adjudication cannot be sustained. The information provided by the CI, and relied upon by the hearing officer, was critical to a finding of guilt, yet the hearing officer failed to explain why he found the CI credible and his story reliable. Because of the hearing officer's failure to adhere to the necessary procedural safeguards of *N.J.A.C.* 10A:4–9.15(b)(1), Johnson's right to a fair hearing was compromised, and the administrator or his designee should have ordered a new hearing pursuant to *N.J.A.C.* 10A:4–11.5(a)(2).

Reversed and remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.