NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0712-15T4

NEW JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS, SANDY
RECOVERY DIVISION,

    Petitioner-Respondent,

v.

JOSEPH MAIONE,

    Respondent-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **August 23, 2018** |
| **APPELLATE DIVISION** |

Argued March 14, 2018 — Decided August 23, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from the Department of Community Affairs, Sandy Recovery Division, Agency Docket No. RSP0001747.

John A. Conte, Jr., argued the cause for appellant (Rubenstein, Meyerson, Fox, Mancinelli, Conte & Bern, PA, attorneys; John A. Conte, Jr. and James de Stefano, on the brief).

Valentina M. DiPippo, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa D. Schaffer, Assistant Attorney General, of counsel; Valentina M. DiPippo, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Joseph Maione appeals from the final decision of the Department of Community Affairs (DCA) that found him ineligible to receive two Superstorm Sandy recovery grants: the Rehabilitation, Reconstruction, Elevation and Mitigation (RREM) grant in the amount of $75,000; and the Resettlement Program grant (RSP), in the amount of $10,000. The DCA awarded these grants to assist homeowners remain in the County after the storm damaged their primary residence or to help them rebuild or repair their damaged primary residence.[1] The DCA Sandy Recovery Division published the eligibility criteria for these grants on its website. Both grants expressly condition eligibility to receive these funds on the damaged house being the applicant's primary residence at the time the storm hit on October 29, 2012.

Appellant was awarded these two grants based on his representation on the grant applications that his primary residence was a property he owned in Toms River. However, the DCA thereafter found documentary evidence showing appellant's primary residence at the time of the storm was an apartment located on Adams Street in Hoboken that he shared with his mother. Based on

---

[1] The devastation Superstorm Sandy caused to our shore communities is well-documented. See Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 299 n.1 (App. Div. 2018).

this determination, the DCA demanded that appellant refund the $85,000 he received through these grants.

Appellant contested the DCA's decision and requested a hearing to present evidence in support of his claim. The matter was transferred to the Office of Administrative Law for a plenary hearing before an Administrative Law Judge (ALJ). After considering the testimonial and documentary evidence presented, the ALJ issued an Initial Decision finding appellant did not satisfy the criteria for eligibility with respect to these two grants and concluded he was obligated to return the $85,000 grant funds. The DCA Commissioner adopted the ALJ's Initial Decision as his Final Decision.

Appellant now argues before this court that the Commissioner's decision, finding his primary residence at the time of the storm was in Hoboken, is arbitrary and capricious because it was not based on the common law concept of "domicile." We reject this argument. The DCA conditioned the award of these grants on the applicant meeting the criteria for eligibility published on its website. The threshold criterion for eligibility is that the property damaged by the storm was the applicant's primary residence.

The ALJ found that appellant's Toms River property was not his primary residence at the time of the storm. As the ALJ explained in her Initial Decision:

> [T]he documentation pointing to Toms River is extraordinarily thin — essentially just a Homestead Rebate and a statement to FEMA. And more important, in March 2012 [appellant] made a declaration of primary residence to the federal government and took a 2011 tax credit based on that declaration, which stated that the Adams Street property was his primary home. No documentation supports any substantial change between 2011 and 2012.

The ALJ's findings are amply supported by the record developed by the parties at the administrative hearing. We therefore affirm the decision of the DCA Commissioner. The following facts inform our analysis.

On May 24, 2013, appellant applied for a grant under the RSP. The RSP eligibility criteria describes in plain language what the applicant needs to establish to receive this financial assistance. Section 4 is titled "Occupancy as Primary Residence." Section 4.1 states: "Applicants must have occupied the property as their primary residence on the date of the storm[, October 29, 2012]. Second homes, vacation homes and rental properties do not qualify an applicant for a Resettlement Grant."

On June 5, 2013, appellant also applied for a grant under the RREM program. The RREM program also has a plainly worded

eligibility criteria. Section 3.4 is titled "Primary Residence" and states: "Applicants must have occupied the property as their primary residence on the date of the storm (October 29, 2012). Second homes, vacation homes, and rental properties are not eligible for a RREM grant award."

Appellant executed a grant agreement for the RSP on July 23, 2013, and executed a grant agreement for the RREM program on January 13, 2014. The DCA awarded appellant a $10,000 grant under the RSP program, and a $75,000 grant under the RREM. On March 12, 2015, the DCA informed appellant that it had determined he was not eligible to receive these funds under the RSP and RREM programs because the damaged property listed on his applications was not his primary residence at the time of the storm. The DCA demanded that appellant void the two checks totaling $85,000 or return the grant funds directly to the State Treasurer.

By letter dated March 19, 2015, appellant contested the DCA's determination and demand for the return of the grant funds, and requested a hearing before an ALJ. The hearing before the ALJ began on June 16, 2015. The DCA presented the testimony of Nicholas Smith-Herman, project assistant in the Office of Compliance and Monitoring. According to Smith-Herman, in the course of conducting a "checks and balances" review of grant applications, he discovered that appellant's RSP and RREM

applications lacked "primary residence support." At that point, appellant was in the "constructive phase" of his restoration project. This meant he had received part of the funds and had started to reconstruct the property.

Smith-Herman explained that to be eligible for RSP and RREM grants, an applicant must have owned or occupied the damaged property at the time of the storm, and sustained at least $8000 of storm-related property damage or had evidence that at least one foot of flood-water had penetrated the first floor of the property. Furthermore, to qualify for a RREM grant, an applicant cannot earn more than $250,000 a year and must register the damaged property as their primary residence with the Federal Emergency Management Agency (FEMA). The applicant is required to establish that the damaged property was his or her primary residence at the time of storm.

To satisfy this "primary residence" requirement, the DCA requires three types of documentary evidence: a "2012 tax return, voter registration[,] and a New Jersey driver's license." If an applicant does not have these three documents as proof, the DCA may accept alternative forms of documentation, on a case-by-case basis. For example, Smith-Herman testified that the DCA has accepted a form 1099R from the New Jersey Division of Pension and Benefits for the year 2012.

6

Here, Smith-Herman testified that the DCA found appellant's Toms River house was not his primary residence during Sandy based on the following evidence: (1) appellant listed an apartment located on Adams Street in Hoboken as his address on his New Jersey driver's license; (2) his tax returns for the years 2010 through 2013 listed the Hoboken address as his primary residence; and (3) appellant is registered to vote in Hoboken. Furthermore, appellant has changed the address on his New Jersey driver's license twice: the first time was in February 2014, when he changed it from the Hoboken address to a Tinton Falls address; the second time was in December 2014, when he changed it from the Tinton Falls address back to the Hoboken address.

Finally, to qualify for a Residential Energy Credit, appellant identified the Hoboken apartment as his "main home" on his 2011 federal-tax return, a document he signed under oath and submitted to the Internal Revenue Service. Smith-Herman also testified that appellant listed the Hoboken address on his form 1099R for the New Jersey Division of Pension Benefits. Although appellant received a Homestead Property Tax rebate for the Toms River address in 2011, Smith-Herman explained that this is not the type of documentation the DCA considers as proof of primary residence, especially in a case such as this, where there is strong countervailing evidence establishing otherwise.

The record before the ALJ also contains proof that appellant's property tax bills for the Toms River property were sent to him at the Hoboken address. Considering the amount of competent evidence establishing that appellant's primary residence on October 29, 2012 was in Hoboken, balanced against appellant's failure to produce acceptable documentation to prove that his primary residence was his house in Toms River, the DCA determined that appellant was not eligible for either the RREM or RSP grant programs.

Appellant testified that he and his former wife purchased the Toms River property on August 18, 2004, to use as a second house during the summer months. In June 2005, appellant suffered a "double stroke" that left him temporarily unable to speak, walk, eat, or even drink. Thereafter, he moved into his mother's apartment in Hoboken so she could be his primary caregiver. During this period of recovery from the strokes, he relied on his mother "and several close friends in Hoboken." When asked how long he relied on his "mother's assistance," appellant responded: "[T]wo to three years." Appellant was employed as a police officer in Hoboken during a significant part of the time he alleged he was residing with his mother to recover from the "double stroke." As he explained:

Q. What happened after your illness with your career?

A. Well, I was out on sick leave for a year after the stroke, but since there were no major improvements with my balance and my vision I was forced to retire early from the police . . . force.

He eventually retired from the Hoboken Police Department. Approximately four years after his stroke, appellant became the sole owner of the Toms River house. This came about through a Property Settlement Agreement (PSA) appellant and his former wife negotiated and signed to equitably distribute the marital estate. The PSA was part of the Final Judgment of Divorce dated February 25, 2009.

Appellant also called as witnesses Dennis Whalen, who owns a house in Toms River near appellant's property, Betsy Rivera, who testified she was appellant's girlfriend, and his mother Patricia Maione. These three witnesses supported appellant's claim that his primary residence when Sandy struck the Jersey shore was the Toms River property. Whalen testified that he saw appellant on a regular basis for at least five years; he remembered seeing him "[a]ll the time" the month before Sandy. Rivera testified that when she met appellant in 2009, his primary residence was the Toms River house. Appellant's mother testified that by 2009, appellant had begun his transition to live in Toms River. She claimed that

appellant chose not to change many of the billing addresses from the Hoboken address to the Toms River address because he still had stroke-related mobility problems and was concerned about walking to the mailbox in Toms River during inclement weather. She also testified he was no longer receiving mail in Hoboken around the time Sandy struck because he was not living with her. Appellant also presented a series of documents addressed to him at the Toms River address around the time of the storm.

In her Initial Decision issued on August 31, 2015, the ALJ found the DCA established that appellant did not qualify for the RREM and RSP grant programs because the Toms River house was not his primary residence during the storm. Although she was inclined to believe the testimony that appellant resided at the Toms River house full-time at the time of the storm, "the documentation supporting that claim [came] down to a statement to FEMA and a Homestead Rebate." By contrast, the ALJ particularly noted that appellant's 2011 income tax return, "which was filed on March 22, 2012, claimed a Nonbusiness Energy Property Credit for improvements he made to his 'main home' at . . . Adams Street" in Hoboken.

After considering all of the evidence presented by the parties, the ALJ concluded:

> [Appellant]'s situation is sympathetic, and there is an argument that he is a disabled person who got in the habit of relying on his mother after his strokes, such that all the documentation pointing to [the Hoboken address] should be discounted. But the documentation pointing to Toms River is extraordinarily thin[,] essentially just a Homestead Rebate and a statement to FEMA. Even the homeowner insurance policy in 2012 did not require primary residence. <u>And more important, in March 2012 he made a declaration of primary residence to the federal government and took a 2011 tax credit based on that declaration, which stated that the [Hoboken address] was his primary home</u>. No documentation supports any substantial change between 2011 and 2012. Therefore, based on the documentation, I conclude that the [DCA] has met its burden in demonstrating that [appellant] did not qualify for the Resettlement Program grant, such that it must be returned. Additionally, I conclude that [appellant] has not proved eligibility for the RREM Program.
>
> [(Emphasis added).]

On October 15, 2015, DCA Commissioner Charles A. Richman adopted the ALJ's Initial Decision as his Final Decision.

Appellant now argues before this court that the Commissioner's decision, accepting without modification the ALJ's finding that the Toms River house was not his primary residence, was arbitrary and capricious. Appellant argues the Commissioner should have considered and applied the common law concept of domicile in making this determination. Appellant claims that he

established that the Toms River house was his domicile, thus proving that the Toms River address was his primary residence.

Our standard of review of final decisions of State administrative agencies is well-settled. The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN-to RN Bridge Program, 225 N.J. 533, 541 (2016). An appellate court may only reverse if the decision of the administrative agency is "'arbitrary, capricious, or unreasonable,' the determination 'violate[s] express or implied legislative policies,' the agency's action offends the United States Constitution or the State Constitution, or 'the findings on which [the decision] was based were not supported by substantial, credible evidence in the record.'" Ibid. (alterations in original) (quoting Univ. Cottage Club of Princeton N.J. Corp v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007)). "The burden of demonstrating that the agency's action was arbitrary, capricious, or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div.), certif. denied, 188 N.J. 219 (2006).

Moreover, this court will "defer to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is 'plainly unreasonable.'"

U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (alterations in original) (quoting In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). However, an appellate court is not "relegated to a mere rubberstamp of agency action," but rather must "engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (citations omitted).

We reject appellant's arguments and affirm substantially for the reasons expressed by the ALJ, as adopted by the Commissioner of Department of Community Affairs as his Final Decision in this case. R. 2:11-3(e)(1)(D). We add only the following brief comments. Appellant's argument attacking the approach employed by the ALJ and adopted by the Commissioner in determining what constitutes "primary residence" for determining who is eligible to receive a grant under RREM and RSP is not only without merit, it would lead to needless uncertainty and undermine the sound administration of these relief programs.

The Sandy-related grants at issue here were created to assist a class of property owners whose "primary residence" was damaged or destroyed by this "superstorm." The grant applications contained a list of specific documents that the DCA uses to make these critical eligibility determinations. The public policy

13

underpinning these relief programs is to provide financial assistance to a particular class of homeowners in a straightforward manner.

Appellant urges us to reject this straightforward approach established by the DCA and rely instead on the common law concept of "domicile." In our view, this would seriously compromise the essential purpose of these relief programs. It would require applicants to retain lawyers to research how the common law concept of "domicile" can be applied in this context. In response, the DCA would need to assign an equal number of lawyers to review each application to ensure it conforms to this legal standard. Such an approach would sink these salutary programs in a quagmire of ambiguity and divert public resources to pay lawyers, instead of carpenters, masons, and plumbers.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0712-15T4