**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4393-17T3

LLOYD GAINES,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted May 6, 2019 – Decided May 30, 2019

Before Judges Gooden Brown and Rose.

On appeal from the New Jersey Department of Corrections.

Lloyd Gaines, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Nicholas A. Sullivan, Deputy Attorney General, on the brief).

PER CURIAM

New Jersey State Prison Inmate Lloyd Gaines appeals from the May 9, 2018 final agency decision of the New Jersey Department of Corrections (NJDOC), upholding the hearing officer's guilty finding and imposition of sanctions for committing prohibited acts *.803 and *.203, in violation of N.J.A.C. 10A:4-4.1(a). Prohibited act *.203 is a Category B offense, which proscribes the "possession or introduction of any prohibited substances such as drugs, intoxicants[,] or related paraphernalia not prescribed for the inmate by the medical or dental staff." N.J.A.C. 10A:4-4.1(a)(2)(xv). Prohibited act *.803 proscribes "attempting to commit, aiding another person to commit[,] or making plans to commit any Category A and or B offense." N.J.A.C. 10A:4-4.1(a)(1)(xiv).

On appeal, Gaines raises the following points for our consideration:

POINT I

THERE WAS NOT SUFFICIENT EVIDENCE TO SHOW GUILT[.]

POINT II

THE PARALEGAL WAS INEFFECTIVE[.]

POINT III

THE HEARING OFFICER WAS UNFAIR[.]

A-4393-17T3

POINT IV

THE RECORD IS UNCLEAR[.]

POINT V

THE ADMINISTRATIVE APPEAL WAS DEFICIENT[.]

We have considered these arguments in light of the record and applicable legal principles. We reject each of the points raised and affirm.

The disciplinary charges that are the subject of this appeal stemmed from Senior Investigator John Kline, Special Investigation Division, intercepting an email exchange between Gaines and a woman by the name of Ariel Gaines,[1] which Kline believed evidenced an attempt to bring marijuana into the prison. On April 19, 2018, Gaines sent an email through his JPay account[2] to Ariel telling her "just remember . . . the cows" and "look for cows." On April 20, 2018, Ariel responded in an email stating "[s]upposedly everything was to[o] lit up, they [were] expecting it to be dark and they got followed and seen [by] the

---

[1] Ariel Gaines was not listed as an approved visitor for Gaines. However, an individual by the name of Ariel Williams was listed, and the address for both individuals was the same.

[2] Through JPAY Inc., the NJDOC allows inmates to send and retrieve e-messages to and from friends and family members.

same corrections van twice." In the email, Ariel also said she was sent "[ten] bags wit[h] 100," "[twenty-five] balloons green," "[three] lighters," "[four] papers," "[and one] pac[k] buglers." Based on Kline's training and experience, "[twenty-five] balloons green [was] code for 'marijuana.'" Thus, Kline believed Gaines was attempting to have Ariel drop marijuana along the fence line of the prison. As a result, on April 30, 2018, the subject charges were filed against Gaines.

On May 2, 2018, Gaines was served with the disciplinary charges, which were referred for a hearing. After two postponements, a hearing was conducted on May 7, 2018, following all procedural requirements. Specifically, Gaines waived the twenty-four hour notice requirement, was granted counsel-substitute, and declined the opportunity to call witnesses. In asserting his innocence, Gaines presented a statement indicating that the email only referred to tobacco in the balloon. Gaines was also afforded the opportunity to cross-examine Kline, and, to that end, presented him with numerous confrontation questions. Notably, Gaines asked Kline whether "[i]t [was] a fact" or "speculation" that "the balloons had contraband in them," and queried whether the "green balloons" could have been used to "package" and "transport" "bugler tobacco," which would make an attempt to possess tobacco products, a less severe Category D offense, the more

4

appropriate charge. See N.J.A.C. 10A:4-4.1(a)(4)(vii) (listing .554 as a Category D offense, proscribing "possession of tobacco products or matches where not permitted"). Gaines also questioned how he would have been able to retrieve the items if they were supposed to be "delivered by the fence line" of the prison.[3]

Kline responded that "[b]ased on [eighteen years] of experience," "[b]alloon[s]" were "used to hide all sorts of contraband—CDS, tobacco[,] or pills" but "[c]ode word green [was] a vegetative substance that [was] marijuana." Kline acknowledged that the balloons could have had tobacco in them and that "[ten] bags with 100" and "[four] papers" referred to "[r]olling papers for . . . tobacco or marijuana." However, Kline explained that because the bugler tobacco was specifically "identified" in the list of items in the email, it would be illogical to refer to it again as the item inside the balloon. Kline also stated that based on Gaines' job assignment at the dairy, it was "reasonable to believe someone could get it to the dairy from the fence line."

The disciplinary hearing officer (DHO) considered all the evidence, including Gaines' statement and Kline's responses to Gaines' confrontation questions. In finding Gaines guilty of the charges, the DHO rejected Gaines'

_____

[3] At the time, Gaines was housed at the Bayside State Prison (BSP) Farm Unit.

claim that he was only attempting to introduce tobacco into the facility, and credited Kline's explanation of the significance of the coded words in the email based on Kline's training and experience. Gaines was sanctioned with the imposition of 120 days of administrative segregation, 120 days' loss of commutation time, 365 days' urine monitoring, thirty days' loss of JPay email, fifteen days' loss of recreational privileges, and permanent loss of contact visits.

Gaines filed an administrative appeal, arguing that there was a "[v]iolation of [the] [s]tandard" and a "[m]isinterpretation of the facts," and seeking "[l]eniency." Gaines "maintained [his] innocence" and asserted that he and Ariel "were talking about something total[l]y different." On May 9, 2018, the BSP Assistant Superintendent (AS) upheld the DHO's decision and sanctions, noting "[t]he decision . . . was based upon substantial evidence." Further, according to the AS, Gaines admitted introducing "tobacco into the institution." Gaines' request for leniency was also denied and this appeal followed.

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App.

6

Div. 2010).  "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

Further, when reviewing a determination of the NJDOC in a matter involving prisoner discipline, we engage in a "careful and principled consideration of the agency record and findings."  Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Public Safety, 64 N.J. 85, 93 (1973)).  We consider not only whether there is substantial credible evidence that the inmate committed the prohibited act, but also whether, in making its decision, the NJDOC followed regulations adopted to afford inmates procedural due process.  See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

Admittedly, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply."  Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  However, the inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of NJDOC regulations. N.J.A.C. 10A:4-9.1 to -9.28.

Those rights include an inmate's entitlement to written notice of the charges at least twenty-four hours prior to the hearing, N.J.A.C. 10A:4-9.2, a fair tribunal, N.J.A.C. 10A:4-9.15, a limited right to call witnesses and present documentary evidence, N.J.A.C. 10A:4-9.13, a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed, N.J.A.C. 10A:4-9.24, and, in certain circumstances, the assistance of counsel-substitute, N.J.A.C. 10A:4-9.12. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied that there was substantial credible evidence in the record to support the finding of guilt, and Gaines received all the procedural due process he was entitled to, despite his assertions to the contrary. In addition, the sanctions imposed were commensurate with the severity of the infractions and authorized under N.J.A.C. 10A:4-5.1 for an asterisk offense. Indeed, asterisk offenses "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

For the first time on appeal, Gaines asserts his counsel-substitute was ineffective by failing to "put up a defense, especially in light of the lack of evidence, and the answers given at confrontation." Additionally, Gaines claims he could not have "argue[d] the ineffective assistance point previously" because his counsel-substitute had him "sign the administrative appeal form prior to it being filled out" by the counsel-substitute.

Although the assistance of counsel-substitute in prison disciplinary hearings is not equivalent to the constitutional right to counsel in non-institutional proceedings, an inmate who receives assistance from a counsel-substitute who is not "sufficiently competent" has been effectively denied the due process protections established by the applicable regulation. Avant, 67 N.J. at 529. However, because Gaines never claimed ineffective assistance of counsel-substitute in his administrative appeal, and his factual assertions in his merits brief explaining the omission are unsupported, we need not consider this claim on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("It is a well-settled principle that [we] will decline to consider questions or issues not properly presented . . . when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to . . . jurisdiction . . . or concern matters of great public interest'") (quoting Reynolds Offset Co., Inc. v.

Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also Hill v. N.J. Dep't of Corr. Comm'r William Fauver, 342 N.J. Super. 273, 293 (App. Div. 2001) (applying Nieder to prison cases).

Nevertheless, even if we were to consider the argument, we are satisfied that Gaines was not prejudiced by any deficiency such that there exists a "reasonable probability that, but for [counsel-substitute's] unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). In sum, Gaines has not demonstrated that the NJDOC's decision was arbitrary, capricious, unreasonable, unsupported by credible evidence in the record, or violated either the enabling statute or implementing regulations. See Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"). Gaines' arguments, those described here and others not fully set forth, are without sufficient merit to require further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4393-17T3