**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0089-19

JOSE NEGRETE,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted April 13, 2021 – Decided May 19, 2021

Before Judges Gilson and Moynihan.

On appeal from the New Jersey Department of Corrections.

Jose Negrete, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Stephanie D. Trotter, Deputy Attorney General, on the brief).

PER CURIAM

Jose Negrete, a State prisoner, appeals from a final agency determination by the New Jersey Department of Corrections (DOC), which found him guilty of committing prohibited act *.005, threatening another with bodily harm, in violation of N.J.A.C. 10A:4-4.1(a)(2)(ii). The charge was based on statements Negrete made to an Imam during a meeting to discuss religious beliefs. Negrete called the Imam a deviant and referred to the Imam's activities outside the prison. We reverse because the finding of guilt was not supported by substantial credible evidence.

I.

The meeting at which the statements were made arose from a dispute about Islamic teachings. The Imam is employed by the DOC to teach Islamic religious classes. Negrete is Muslim, but he is a member of a different Islamic sect from the sect to which the Imam belongs. In 2017 and 2018, Negrete filed several inmate grievances to the Imam, objecting to some of the Imam's teachings and seeking accommodations for his religious beliefs.

In February 2019, Negrete wrote letters to three DOC officials, including the Imam, seeking to have his sect recognized so that separate Islamic classes comporting with his beliefs could be taught. Shortly thereafter, Negrete wrote

to the Imam asking for an in-person meeting "to address the religious issue [he] wrote [to the Imam] about."

The meeting took place on June 11, 2019, and lasted for approximately two hours. The meeting was attended by Negrete, the Imam, and a DOC Staff Chaplain, who sat in at the Imam's request. During the meeting, Negrete requested to teach religious classes without the Imam's involvement, but that request was denied. Thereafter, Negrete began to speak loudly and called the Imam a "deviant person." The Imam asked why Negrete believed he was a deviant, and in response Negrete referred to the Imam's activities outside the prison and stated that he had a brochure describing an Islamic religious conference. Negrete also stated that the brochure contained the Imam's name along with other religious figures and Negrete explained that he did not share the same religious beliefs as those individuals.

On June 12 and 13, 2019, the Imam and Chaplain wrote reports concerning the meeting. Neither of those reports characterized Negrete's words as threatening, but the Chaplain described Negrete's behavior as "disrespectful." The Imam wrote that his "only concern" was that "maybe Mr. Negrete is collecting information about me and my family."

A-0089-19

Approximately three weeks later, on July 2, 2019, the Imam wrote a second report. In that report, he explained that while he initially did not perceive Negrete's remarks as a physical threat, after speaking with other persons and learning of Negrete's background, he "now definitely consider[ed] what [Negrete] said . . . to be a serious threat." The Imam went on to express concerns about his and his family's safety and noted that comments like Negrete's were not taken lightly in his religion. The following day, on July 3, 2019, Negrete was charged with threatening the Imam with bodily harm.

Negrete pled not guilty and was appointed counsel substitute. He submitted a written statement explaining his ongoing religious disagreement with the Imam and his long-standing relationship with the Imam's brothers, who assisted Negrete in converting to Islam. Negrete also submitted supporting documents, including the brochure he referred to during the meeting and copies of the grievances he had previously filed. Negrete denied threatening or intimidating the Imam and contended that the charge was unsupported. Negrete also argued that the delay between the meeting and the Imam's second report was a violation of his due process rights.

The disciplinary hearing was conducted on July 19, 2019. No witnesses appeared. Instead, the hearing officer reviewed the Imam's and the Chaplain's

A-0089-19

reports. In addition to the written statements and documents he submitted, Negrete confronted the Imam with written questions, to which the Imam responded.

Based on the written record, the hearing officer found Negrete guilty of threatening the Imam with bodily harm. The hearing officer supported that finding with a four-page written explanation. The hearing officer reasoned that "it is quite plausible to believe that the [inmate] made indirect statements about the Imam's outside activity in an attempt to instill fear," and "[g]iven the nature of the prison environment, there is no justifiable reason" to make such comments. Accordingly, the hearing officer found that there was sufficient evidence to support the charge as "the words stated reasonably conveyed the sense of fear/harm/menace to the ordinary hearer."

The hearing officer also rejected Negrete's arguments and deemed the documents that he had submitted to be "irrelevant" to his defense. Additionally, the hearing officer found the Imam's reports were corroborated by the Chaplain's report. In that regard, the hearing officer stated:

> [B]oth reports discuss the [inmate] calling the Imam a "deviant," informing the Imam he is aware of the Imam's outside activities [and] the Imam asking the [inmate] if he was "spying" on him, all of which is the underlying basis for the threatening charge.

5

The hearing officer further found that the delay between the underlying incident and the charge did not violate Negrete's due process rights. Negrete was sanctioned with ninety days loss of commutation time, ninety-one days of administrative segregation, and twenty days loss of recreational privileges.

Negrete administratively appealed, arguing the finding of guilt was not supported by substantial evidence. On August 1, 2019, the DOC, through an assistant superintendent, upheld the finding of guilt and the sanctions imposed, reasoning the disciplinary proceeding complied with procedural safeguards and there was sufficient evidence of Negrete's guilt.

II.

On this appeal, Negrete argues that there was insufficient evidence to support a finding of guilt and his due process rights were violated because of the delay between the time of the alleged threat and the filing of the written charge. Having reviewed the complete record, we hold that there was not substantial evidence that Negrete threatened the Imam with bodily harm.

Our review of agency determinations is limited. In re Stallworth, 208 N.J. 182, 194 (2011); Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). We will not reverse the decision of an administrative agency unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible

6

evidence in the record as a whole." Stallworth, 208 N.J. at 194 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Nevertheless, "we will not perfunctorily review and rubber stamp the agency's decision," Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003), and we must "engage in a 'careful and principled consideration of the agency record and findings,'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

The DOC regulations provide that "[a] finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). In addition, the hearing officer must specify the evidence relied upon in making a finding of guilt. N.J.A.C. 10A:4-9.15(b). Substantial evidence needed to sustain guilt of an infraction is "such evidence [that] a reasonable mind might accept as adequate to support a conclusion." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas, 35 N.J. 358, 376 (1961)).

Prohibited act *.005 is committed when an inmate "threaten[s] another with bodily harm or with any offense against his or her person or his or her property." N.J.A.C. 10A:4-4.1(a)(2)(ii). "The determination of whether a remark constitutes a threat is made on the basis of an objective analysis of

7

whether the remark conveys a basis for fear." Jacobs v. Stephens, 139 N.J. 212, 222 (1995).

The hearing officer identified two remarks by Negrete as the basis for the threat charge: (1) Negrete calling the Imam a deviant; and (2) Negrete informing the Imam that he was aware of the Imam's outside activities. The record at the disciplinary hearing does not support a finding that either of those remarks objectively conveyed a threat against the Imam, his family, or his property.

Negrete's remarks must be considered in context. See Figueroa, 414 N.J. Super. at 191. For several years, Negrete had expressed both to the Imam and to other DOC officials that he had religious views that differed from the Imam's. In that regard, Negrete retained First Amendment rights that could be limited only by "legitimate penological objectives of the corrections system." Jones v. N.C. Prisoners Lab. Union, 433 U.S. 119, 129 (1977); In re Inmate Mail to Att'ys, 120 N.J. 137, 147 (1990). Accordingly, Negrete's use of the term "deviant" – by itself – did not establish a threat because it was made in the context of an ongoing dispute over different views of Islam.

The record also lacks sufficient support to infer a physical threat from Negrete's reference to the Imam's outside activities. Negrete referred to those activities in response to the Imam's question of why he was being called a

deviant. Negrete responded by stating that he had a brochure in his cell discussing an Islamic conference and that Negrete did not share the same beliefs as the religious figures who had spoken at that conference.

In summary, there is not sufficient evidence in the record to support a finding that the remarks made by Negrete to the Imam objectively conveyed a threat of harm. Moreover, the DOC failed to consider Negrete's legitimate First Amendment rights. Given our conclusion that the charge was not sustained on the evidence submitted, we need not reach Negrete's due process contentions. The finding of guilt of prohibited act *.005 is reversed and the sanctions imposed are vacated.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0089-19