**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0865-19

COREY MORRIS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted April 20, 2021 – Decided June 9, 2021

Before Judges Fisher and Moynihan.

On appeal from the New Jersey Department of Corrections.

Corey Morris, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Corey Miller appeals from a Department of Corrections final decision imposing disciplinary sanctions on him for violation of prohibited act *.203, "possession or introduction of any prohibited substances such as drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff."[1] N.J.A.C. 10A:4-5.1(p)(1). As set forth in a disciplinary report submitted by the DOC officer who found the alleged prohibited substance during a search commenced after another officer smelled a strong odor of marijuana emanating from the cell Miller shared with a cellmate, a green leafy substance was discovered "on top of a ceiling light fixture, just above the entrance of the cell."

Miller argues our holding in Blanchard v. New Jersey Department of Corrections, 461 N.J. Super. 231, 241 (App. Div. 2019), requires that we vacate the decision because it was based on the disciplinary hearing officer's finding that rested "entirely on . . . alleged field test results," showing the substance was marijuana. After engaging "in a 'careful and principled consideration of the

---

[1] The "Zero Tolerance Drug/Alcohol Policy," N.J.A.C. 10A:1-2.2, mandates that, in addition to other administrative action and program requirements meted out in accordance with Inmate Discipline regulations under N.J.A.C. 10A:4, inmates found guilty of "drug/alcohol related prohibited acts," including that with which with Miller was charged, "have their contact visit privileges terminated."

agency record and findings,'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)), under our limited standard of review, In re Stallworth, 208 N.J. 182, 194 (2011); Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997), we affirm. Blanchard is inapposite.

In Blanchard, we recognized "[t]he sole issue [was] whether, in a case with a single positive field test of unproved reliability, and no other corroborating evidence, procedural fairness compels a second, confirmatory test, to assure that the field test did not produce a false positive." 461 N.J. Super. at 241. The DOC had contended a field test of "a white powdery substance in a folded or rolled piece of paper that was tucked in a paperback book" found during a search of Blanchard's property was positive for cocaine. Id. at 236. At his hearing Blanchard had "insisted the field test result was a false positive," and asserted the powder was a generic sweetener given to him by a fellow inmate. Id. at 236. Blanchard requested "the hearing officer to send the powder to the State Police Laboratory, but the request was denied." Id. at 236-37. We concluded "denying Blanchard a confirmatory test was arbitrary, capricious or

unreasonable,[2] and deprived him of a fundamentally fair proceeding under the circumstances." Id. at 248. Those circumstances included:

> The [DOC] did not produce direct or circumstantial evidence of drug possession to supplement the field test result. Searches of Blanchard's person and his cell were fruitless. The [DOC] presented no other witnesses who observed transactions or other indicia of drug possession. . . . Although Blanchard did store the powder in folded or rolled magazine paper inside a book, he apparently possessed the book while in the mailroom, rather than secrete it where it was less susceptible to discovery.
>
> [Id. at 246-47.]

The proofs against Morris presented a different set of circumstances. Morris did not request a confirmatory test, and the hearing officer's decision finding Morris guilty—upheld on appeal by an assistant superintendent who found "[t]he preponderance of [the] evidence presented supports" that decision—was based on substantial evidence in the record in compliance with N.J.A.C. 10A:4-9.15(a), Figueroa v. Dep't of Corr., 414 N.J. Super. 186, 190-91 (App. Div. 2010); "substantial evidence [being] such evidence as a reasonable

---

[2] We will not reverse the decision of an administrative agency unless "it is arbitrary, capricious or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also Stallworth, 208 N.J. at 194.

mind might accept as adequate to support a conclusion," <u>Application of Hackensack Water Co.</u>, 41 N.J. Super. 408, 418 (App. Div. 1956); <u>see also Figueroa</u>, 414 N.J. Super. at 192.

Not only did the field test conducted by the New Jersey State Prison Special Investigations Division return a positive finding, other evidence noted by the hearing officer—staff reports and photographs—established the substance was marijuana. The substance was not innocuous like the white powder found in Blanchard's book, and it was found in a more secreted place than a book in the prison mailroom. The officer who was performing a security tour past Morris's cell smelled a strong odor that he believed to be marijuana. Although no substance was found on Morris and his cellmate, and both tested negative for drugs, a search was conducted because the odor of marijuana lingered inside the cell after the inmates were removed. Another officer found two small bundles of paper containing a green, leafy substance as depicted in three photographs, with a strong odor of marijuana atop the light fixture. With the bundles were two notes that indicated the possible distribution or sale of prohibited substances.

A-0865-19

Moreover, the hearing officer's decision was also based on Morris's change of his plea to guilty after he rescinded his right to confrontation.[3] The hearing officer took Morris's plea into consideration and granted "some leniency" in determining the sanctions.[4]

Unlike the proofs in Blanchard, there was substantial evidence Morris committed the prohibited act.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Morris's request for a polygraph examination was denied. He does not challenge that determination on appeal.

[4] Morris does not challenge the sanctions on appeal.