**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1287-17T2

SHAMSIDDIN ABDUR-RAHEEM,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

          Submitted September 9, 2019 – Decided September 23, 2019

          Before Judges Sumners and Natali.

          On appeal from the New Jersey Department of Corrections.

          Shamsiddin Abdur-Raheem, appellant pro se.

          Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Michael Ezra Vomacka, Deputy Attorney General, on the brief).

PER CURIAM

Shamsiddin Abdur-Raheem (Abdur-Raheem) appeals the September 12, 2017 final decision of the New Jersey Department of Corrections (DOC) that he committed prohibited act *.002, assaulting any person, and .304, using abusive or obscene language to a staff member. The sanctions imposed included 300 days of commutation time, 270 days of administrative segregation, and 30 days loss of recreation privileges. We affirm.

The facts elicited at the disciplinary hearing reveal that on July 13, 2017, Abdur-Raheem, an inmate at the New Jersey State Prison in Trenton, had an altercation with Senior Correction Officer Peter Harrison. Specifically, Abdur-Raheem yelled at Harrison and called him a "f***ing cracker" after which Harrison instructed Abdur-Raheem to return to his cell. Rather than heed Harrison's directive, Abdur-Raheem pushed him in the chest. Harrison attempted to restrain Abdur-Raheem when other corrections officers who witnessed the confrontation arrived to assist. Abdur-Raheem continued to resist and the officers on scene called a Code 33.[1] Abdur-Raheem was ultimately restrained and taken to the prison medical clinic where he was treated for minor injuries to his head and face.

---

[1] According to the DOC's merits brief, a Code 33 is called to address an emergency situation in the prison, including when an officer needs assistance.

After an investigation, charges were served on Abdur-Raheem the following day. He was granted counsel substitute, see N.J.A.C. 10A:4–9.12, and pled not guilty. Abdur-Raheem requested a polygraph examination, which was administratively considered and denied. The disciplinary hearing was repeatedly postponed in order to allow Abdur-Raheem and his counsel substitute to confer, obtain and review relevant information, and to prepare confrontation questions.

A confrontation hearing was scheduled, during which Disciplinary Hearing Officer (DHO) Lisa Jantz received and considered in excess of over one-hundred confrontation questions submitted by Abdur-Raheem, including rebuttal questions. Pursuant to DOC protocol, Abdur-Raheem submitted his written questions to DHO Jantz, who then propounded them to numerous DOC witnesses, which included Harrison and other officers who partially witnessed or responded to the July 13, 2017 incident. DHO Jantz extensively detailed in the record the reasons for permitting certain questions and denying others, noting that certain of the propounded questions were irrelevant or duplicative.

DHO Jantz denied Abdur-Raheem's request to confront Special Investigator Rodriguez[2] who responded to the medical clinic to take photos and investigate the incident. DHO Jantz noted that Abdur-Raheem "refused to cooperate with questioning" by Special Investigator Rodriguez and his proposed confrontation questions were adequately addressed in the medical and other records related to the incident.

Abdur-Raheem also requested video evidence of the altercation between him and Harrison but after an investigation, DHO Jantz determined that no such video was available for the area where the incident occurred. The DOC provided Abdur-Raheem with reports prepared by the officers involved, and who appeared at the confrontation hearing.

Abdur-Raheem prepared a statement denying his guilt. He maintained the charges were fabricated and he was assaulted by Harrison in retaliation for submitting grievances.

Abdur-Raheem also requested an opportunity to question inmates who may have witnessed the incident. Rather than identifying specific witnesses, however, Abdur-Raheem sought to call for in-person questioning as fact

---

[2] We omit Special Investigator Rodriguez's first name because it is not included in the record.

A-1287-17T2

witnesses all inmates in cells thirteen to twenty-four and thirty-seven to forty-eight, which included potentially twenty-nine inmates that resided in the top and bottom tiers of his unit. Instead of granting this request, DHO Jantz directed the DOC to obtain statements from the inmates in cells forty-three to forty-eight, which were located in the area where the incident occurred.

Two of the inmate statements actually supported Harrison's account of the incident. Indeed, one inmate stated he heard Abdur-Raheem making threatening racial and personal verbal attacks toward Harrison the day of the incident, and a second inmate stated he witnessed Abdur-Raheem push Harrison. The remaining inmates failed to provide a statement or indicated they did not witness the incident. There is no record of Abdur-Raheem renewing his request to call any inmate after receiving the aforementioned statements.

DHO Jantz considered the witness statements and testimony presented during the confrontation and disciplinary hearings, and concluded that there was sufficient evidence to find Abdur-Raheem guilty of the *.002 and .304 charges. Abdur-Raheem administratively appealed the decision and on September 12, 2017, Assistant Superintendent David Richards upheld the guilty findings and the imposition of sanctions. This appeal followed.

On appeal, Abdur-Raheem claims the DOC denied his "minimal due process rights" by denying his request to call the twenty-nine inmates to provide live testimony, as well as a nurse assigned to distribute medications that he alleged was denied entry to the area by another senior corrections officer immediately prior to the incident. He also argues that DHO Jantz improperly denied his confrontation rights with respect to Investigator Rodriquez.

In addition, Abdur-Raheem maintains DHO Jantz altered his confrontation questions, denied his right to ask questions, omitted words from certain questions, documented incomplete or false responses, prevented follow up confrontation questions, and failed to sequester the testifying officers. Next, Abdur-Raheem claims he was prevented from presenting documentary evidence such as the photos of his injuries, previous grievances he filed, and related records. Further, he claims that DHO Jantz's decision was based on a "false factual basis," and she was not an "impartial decision maker." Finally, he maintains DHO Jantz abused her discretion in denying his request for a polygraph. We have considered Abdur-Raheem's arguments against the record on appeal and conclude they are all without merit. We offer the following comments.

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable[,] or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

When reviewing a determination of the DOC in a matter involving prisoner discipline, we engage in a "'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Public Safety, 64 N.J. 85, 93 (1973)). We consider not only whether there is substantial evidence that the inmate committed the prohibited act, but also whether, in making its decision, the DOC followed regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). However, the inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of NJDOC regulations. N.J.A.C. 10A:4-9.1 to 9.28.

Those rights include an inmate's entitlement to written notice of the charges at least twenty-four hours prior to the hearing, N.J.A.C. 10A:4-9.2, a fair tribunal, N.J.A.C. 10A:4-9.15, a limited right to call witnesses and present documentary evidence, N.J.A.C. 10A:4-9.13, a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed, N.J.A.C. 10A:4-9.24, and, in certain circumstances, the assistance of counsel-substitute, N.J.A.C. 10A:4-9.12. The regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied that there was substantial credible evidence in the record to support the finding of guilt, and Abdur-Raheem received all the process he was due, despite his assertions to the contrary. In this regard, Abdur-Raheem has not demonstrated that the DOC's decision was arbitrary, capricious, unreasonable, or in violation of either the enabling statute or implementing regulations. See Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant").

Here, the evidence presented at the confrontation and disciplinary hearing established that Abdur-Raheem called Harrison a "f***ing cracker" and then shoved Harrison in the chest after ignoring a direct order to return to his cell. Other than Abdur-Raheem's own denials, and unsupported claims that prison officials fabricated the incident to retaliate against him, nothing in the record raises doubt about the reliability of Harrison's and the other officers' observations, testimony, statements, and credibility. Indeed, not a single record or proposed witness supported Abdur-Raheem's account of the incident or buttressed his retaliation theory.

Further, the record does not support Abdur-Raheem's argument that the DOC violated his due process rights when DHO Jantz refused his request to call twenty-nine inmates and the nurse assigned to distribute medications. While inmates have a limited right to call witnesses, see Avant, supra, 67 N.J. at 529–30, DOC regulations vest sole discretion in hearing officers to permit in-person questioning of witnesses during disciplinary hearings. They also enumerate the situations in which such requests may be denied, including if in-person questioning would be irrelevant or likely to produce repetitive testimony. N.J.A.C. 10A:4–9.13(a) and 10A:4–9.14(b). Here, Abdur-Raheem sought to call witnesses from distant areas of the prison that could not see the incident. DHO Jantz was well within her discretion to control the proceedings and deny such an overbroad request and her decision to order the DOC to obtain witness statements from those inmates whose cells were in the immediate vicinity of the altercation was a considered alternative to Abdur-Raheem's request, and consistent with his limited due process rights.

Notably, after Abdur-Raheem received the inmate statements, none of which supported his version of the incident, he never requested to call any specific witness. He also failed to explain how live testimony of any of the witnesses would have likely changed the outcome. In these particular

10

circumstances, where Abdur-Raheem initially sought to call over two-dozen witnesses, seven of which either had no relevant information or contradicted his account, we conclude DHO Jantz did not abuse her discretion in denying Abdur-Raheem's request.

We reach a similar conclusion with respect to Abdur-Raheem's claim of error regarding his request to call at his disciplinary hearing the nurse assigned to deliver medications. First, the record does not reveal that Abdur-Raheem made a specific request to call any of the medical staff for confrontation or testimonial purposes. Rather, Abdur-Raheem sought only the name of the "nurse who was assigned to deliver medication to inmates . . . [on] the morning [of] the [first] shift on July 13, 2017." However, the record reveals that after DHO Jantz determined that "no nurse was on the unit at the time of the incident," she denied Abdur-Raheem's request and instead permitted statements from any staff member who was on the unit and witnessed the incident. To the extent that Abdur-Raheem now claims that it was error for DHO Jantz not to obtain testimony from the nurse, she would have been within her discretion in denying such a request because she had already determined that the nurse was not on the unit at the time, and thus could not provide any relevant testimony. N.J.A.C.10A:4-9.13(a)(2).

A-1287-17T2

We also reject Abdur-Raheem's argument that DHO Jantz improperly denied his right to confrontation with respect to Investigator Rodriguez, as his confrontation questions again clearly sought irrelevant or repetitive testimony. N.J.A.C. 10A:4-9.14(b). Abdur-Raheem's proposed confrontation questions of Investigator Rodriguez merely sought to inquire if he interviewed Abdur-Raheem and took pictures of his injuries at the prison clinic after the incident. DHO Jantz specifically found that Abdur-Raheem "refused to cooperate with questioning" and the medical records, which DHO Jantz clearly considered, "record[ed] any injuries."

Finally, in light of the overwhelming evidence of Abdur-Raheem's guilt, DHO Jantz's decision to deny his request for a polygraph was not an abuse of discretion. A polygraph examination may be requested: (1) when there are issues of credibility regarding incidents or allegations which may result in a disciplinary charge; or (2) as part of a reinvestigation of a disciplinary charge when new evidence indicates serious issues of credibility. N.J.A.C. 10A:3-7.1(a).

"[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary

process." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 20, (App. Div. 2005). "Impairment [of fundamental fairness] may be evidenced by inconsistencies in the [senior correction officer's] statements or some other extrinsic evidence involving credibility . . . such as a statement by another inmate or staff member on the inmate's behalf." Id. at 24. As noted, the officers' testimony and other proofs all consistently confirmed that Abdur-Raheem used abusive language and physically assaulted Harrison. There is no issue of credibility in the record to warrant the requirement of a polygraph examination and we conclude the denial of the examination did not "compromise the fundamental fairness of the disciplinary process." Ramirez, 382 N.J. Super. at 20.

In sum, we conclude there was nothing arbitrary, capricious, or unsupported in the DHO's Jantz's adjudication of guilt. The agency's conclusion was based on the substantial credible evidence existing in the record warranting our deference. In re Vineland Chem. Co., 243 N.J. Super. 285, 309 (App. Div. 1990). To the extent we have not specifically addressed any of Abdur-Raheem's arguments, it is because we consider them sufficiently without merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13