**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3273-17T4

CHARLES SWEET,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 28, 2019 – Decided December 19, 2019

Before Judges Sabatino and Natali.

On appeal from the New Jersey Department of Corrections.

Charles Sweet, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Kevin John Dronson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Charles Sweet, an inmate confined at South Woods State Prison in Bridgeton,[1] appeals from an October 3, 2017 final administrative decision by the New Jersey Department of Corrections (DOC) finding that he committed prohibited acts *.708, "refusal to submit to a search," *.803/*.002, "attempting to commit or aiding another person to commit any category A or B offense," in this case, "assaulting any person," and *.202, "possession or introduction of a weapon, such as . . . a sharpened instrument, knife, or unauthorized tool," contrary to N.J.A.C. 10A:4-4.1(a). Appellant was sanctioned to 365 days of administrative segregation, 365 days loss of commutation credits, fifteen days loss of recreation privileges, and confiscation of the weapon seized from his cell. We affirm.

According to incident reports, on September 11, 2017, Senior Corrections Officers (SCO) Christopher Adones and Adam Higgins attempted to search appellant's cell. Adones maintained that after being directed to exit his cell, appellant became angry and stated "f--k you; you're not searching my room." Adones further claimed that when he attempted to use his radio to request appellant's cell be closed, appellant became aggressive and swung a closed fist

---

[1] At the time of the incident that led to the administrative charges, appellant was incarcerated at Bayside State Prison (BSP) in Leesburg.

at him. Adones maintained that in response, he "pushed [appellant] to the back of the cell and struck him with a . . . closed fist." Appellant was forced to the ground and handcuffed by Higgins and Adones. SCO Felton Goodwin completed the search of appellant's cell and found an eight-inch, sharpened metal rod, or "shank," in a locked footlocker belonging to appellant.

Appellant denied the charges and explained that they were filed in retaliation for grievances and complaints he lodged against a number of BSP officers. According to appellant, on May 19, 2017, an officer inappropriately groped his genitals numerous times while being pat-frisked. Thereafter, appellant submitted a complaint pursuant to the Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 30301-09, to BSP administration. Two days later, appellant alleges that two BSP officers, including Higgins, removed him from his cell, searched it for forty-five minutes, and improperly confiscated his DOC-issued padlock, as well as the padlock of a former cellmate.

Over the next five months, appellant claimed he repeatedly sought an investigation into his allegations as well as protection from any retaliation by BSP officers. On June 29, 2017, during an interview with BSP Special Investigative Division (SID) investigators as part of the PREA complaint investigation, appellant expressed a fear for his safety and well-being. During

the interview, appellant states he identified Adones, Higgins, and the officer who allegedly groped him as among the most threatening and likely to harm him.

Appellant claims that Adones and another officer searched his cell on September 3, 2017, allegedly "trash[ing] the cell" and destroying his personal property. As a result, appellant submitted another complaint to the BSP administrator regarding, among other topics, the cell search and the abusive, threatening conduct of Adones. This complaint, appellant alleges, led to the September 11 incident underlying the current charges against him.

Prior to the disciplinary hearing, appellant requested and was granted the assistance of counsel substitute and, as noted, pled not guilty. He submitted a written statement denying the charges and specifically maintained that contrary to Adones' claim, "his hands were on his head and he did not refuse" the search. He further relied on documentary evidence that the lock on the footlocker was not his, maintaining that his DOC-issued locks were previously confiscated in the May 27 search. In addition, his cellmate submitted a statement confirming that appellant "did not own a lock" and further acknowledged that "the lock in the room" belonged to him.

Appellant also requested copies of a DOC logbook to confirm that his locks were indeed confiscated and a videotape which purportedly memorialized the prior search, and which would assumedly confirm that the DOC seized his locks.

A Disciplinary Hearing Officer (DHO) considered defendant's statements and other evidence, as well as the reports prepared by Adones, Higgins, and Goodwin and found appellant guilty of all of charges. With respect to the *.202 charge, the DHO noted that Goodwin reported finding a weapon locked in appellant's footlocker. The DHO acknowledged that appellant denied the charges, maintained he was not in possession of any locks, and that appellant's cellmate appeared to concede that the lock seized by the DOC from their cell was not appellant's but his. The DHO also considered appellant's request for logbooks and a videotape of the prison dayroom but noted that after an investigation, the requested logbook did not confirm the DOC confiscated any of his locks and that the video of the dayroom was unavailable.

With respect to the *.708 charge, the DHO again considered the parties' written statements and reports and concluded that Adones reported that "[appellant] was ordered to exit his cell for a search and he refused[,] stating 'you're not searching my room.'" Finally, as to the *.803/*.002 charge, the DHO

5

noted that "Adones reported [appellant] attempted to assault him when he was ordered to exit the cell for a search."

The DHO combined the penalties for all three charges. In imposing the sanctions for the *.202 charge, the DHO noted that she relied "on a weapon [that] was found in [appellant]'s possession." The DHO also found that appellant "was ordered out of his cell and he refused. [Appellant] state[d] his hands were on his head and he did not refuse [but appellant] has no proof of his statement." Finally, regarding the sanctions for the *.803/*.002 charge, the DHO recognized that appellant had filed a grievance "regarding officers and their treatment toward him," but nevertheless determined that appellant "attempted to assault an officer when he was ordered to vacate the cell for a search."

On the adjudication reports relating to two of the three charges, appellant's counsel substitute signed and indicated that the information in the form "accurately reflect[ed] what took place at the inmate disciplinary hearing," including that the right to confront adverse witnesses was "[o]ffered [and] denied" as to each charge. On the adjudication report for the *.708 charge, however, there is no signature or other acknowledgement from either counsel substitute or appellant. Copies of the forms were later provided to appellant.

A-3273-17T4

Appellant administratively appealed the disciplinary decision and on October 3, 2017, the DOC Assistant Superintendent upheld the DHO's determination concluding it "was based upon substantial evidence." This appeal followed.

Appellant raises three primary arguments on appeal. First, he argues that he was denied due process in that the DHO's decision was not based upon substantial credible evidence that appellant possessed a weapon or assaulted a staff member. Second, he contends that the DHO "relied solely on staff reports" in making the decision, "disregarding [appellant]'s contrary evidence and statements as well as numerous credibility questions . . . ."

Specifically, appellant asserts that at the time of the September 11, 2017 incident, "his hands were on his head and he did not refuse" the search. In addition, he maintains that the officers whose written statements were considered by the DHO had "documented animosity toward him." Appellant further argues that the DHO improperly placed the burden of proof upon appellant, "provided no reasons for her determination of [appellant's] guilt[,] [and] instead simply repeated staff assertion[s]."

Third, appellant contends that he was not provided with effective assistance of counsel substitute during the disciplinary hearing, as his assigned

counsel substitute did not "advise[] [appellant] of his right to examination of the video evidence, a polygraph examination, and confrontation [of] adverse witnesses . . . ." Appellant maintains that had he been informed of these rights, the DOC "would have had to determine whether 'there [was] a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process.'" (quoting Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 20 (App. Div. 2005)).

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable[,] or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

When reviewing a determination of the DOC in a matter involving prisoner discipline, we engage in a "careful and principled consideration of the agency record and findings." Williams v. Dep't of Corr., 330 N.J. Super. 197,

204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).  We consider not only whether there is substantial evidence that the inmate committed the prohibited act, but also whether, in making its decision, the DOC followed regulations adopted to afford inmates procedural due process.  See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  However, the inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of NJDOC regulations.  N.J.A.C. 10A:4-9.1 to 9.28.

Those rights include an inmate's entitlement to written notice of the charges at least twenty-four hours prior to the hearing, N.J.A.C. 10A:4-9.2, a right to a fair tribunal, N.J.A.C. 10A:4-9.15, a limited right to call witnesses and present documentary evidence, N.J.A.C. 10A:4-9.13, a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed,

N.J.A.C. 10A:4-9.24, and, in certain circumstances, the assistance of counsel-substitute, N.J.A.C. 10A:4-9.12. The regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied that there was substantial credible evidence in the record to support the finding of guilt on all of the charges, and that appellant received all the process he was due, despite his assertions to the contrary. In this regard, appellant has not demonstrated that the DOC's decision was arbitrary, capricious, unreasonable, or in violation of either the enabling statute or implementing regulations. See Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant").

Here, the contemporaneous reports presented at the disciplinary hearing established that appellant refused Adones' and Higgins' attempts to conduct a routine search of his cell, which they had authority to perform regardless of any previous searches. Instead of complying as directed, appellant was belligerent, spewed vituperative epithets at Adones, and swung his closed fist at him. After

appellant was restrained, a different officer, Goodwin, completed the search and filed a report, also considered by the DHO, stating that an eight-inch homemade knife was found in appellant's footlocker that was secured by a lock.

Other than appellant's own denials and unsupported claims that multiple corrections officers fabricated the incident to retaliate against him and, assumedly, planted the weapon in his footlocker, nothing in the record reasonably challenges the reliability of Adones', Higgins', or Goodwin's observations as memorialized in their statements. Indeed, not a single proposed witness directly supported appellant's account of the incident or buttressed his retaliation theory.

Further, the DHO clearly considered appellant's claim that the lock that secured his footlocker where the weapon was found belonged to his cellmate. The DHO specifically referred to, and considered, appellant's cellmate's statement and concluded "it was not supportive" of appellant's defenses. While it would certainly have been better practice to provide a more fulsome explanation for that conclusion, the DHO's bases for its finding are clear from the record.

Indeed, as appellant himself contended, his locks were purportedly confiscated in previous searches and he assumedly did not possess a lock that

could have secured his footlocker when his cell was searched. Neither appellant's nor his cellmate's statements, however, contain any explanation regarding the circumstances surrounding the use of his cellmate's lock on the footlocker. And, at no point did appellant's cellmate contend that the weapon belonged to him. Instead, appellant's claim, as best we can discern it, was that the weapon was planted by corrections officers who jointly conspired to frame him. As noted, that allegation is pure supposition, unmoored to any corroborating proofs, and directly contradicted by the reports of three different officers who memorialized the assault and search.

We also note that appellant never requested to call any specific witness, nor did he request confrontation to support his claims. Indeed, in the adjudication reports completed by the DHO and signed by appellant's counsel substitute, appellant confirmed that he declined the opportunity to call or confront any witness. Specifically, on line fourteen of the adjudication reports, the DHO noted that appellant declined to identify witnesses he "ask[ed] to be called[,] including those requested through the investigator." Further, on line fifteen, which required the DHO to "[l]ist [the] adverse witnesses the inmate requests to confront/cross-examine including those requested through the investigator," appellant explicitly acknowledged that he did not seek

confrontation from any witness. Appellant's counsel substitute executed line sixteen of the adjudication reports and, by doing so, confirmed that the information on lines one through fifteen were accurate and memorialized what occurred at the hearing.[2]

We are therefore satisfied appellant was afforded all of his due process rights regarding the hearing as articulated in Avant, 67 N.J. at 525-33. He was provided notice of the violations, given a written statement, afforded substitute counsel, and had the opportunity to cross-examine adverse witnesses and call his own witnesses, all before an impartial hearing officer.

---

[2] We acknowledge that, contrary to the DOC's representation in its merits brief, line sixteen of the disciplinary adjudication form related to the *.708 charge is not signed by appellant's counsel substitute. We conclude that counsel substitute's failure to sign beneath line sixteen on the *.708 disciplinary adjudication form was inadvertent and does not alter our conclusion that appellant waived confrontation and his right to call witnesses for that charge as well. First, neither counsel substitute nor the DHO identified any "reason for [the] refusal" to affirm line sixteen as specifically requested in line seventeen, suggesting counsel substitute's failure to sign beneath line sixteen was not substantively based. Second, and more importantly, as detailed in our opinion, the facts underlying the *.708 charge, and the percipient witnesses available to appellant directly or in confrontation, are unquestionably inclusive of those supporting the *.202 and *.803/*.002 charges. As noted, appellant's counsel substitute confirmed that the information in the disciplinary report was accurate as to those charges and specifically that appellant did not seek to call any witnesses in his case-in-chief or in confrontation.

We also reject appellant's final point on appeal that the charges should be vacated and the matter remanded for a new hearing because his counsel substitute was ineffective. Although the right to counsel substitute in prison disciplinary hearings is not equivalent to the constitutional right to formal or retained counsel in non-institutional proceedings, Avant, 67 N.J. at 536–37, appointment of counsel substitute is among the procedural safeguards to which inmates are entitled when charged with asterisk offenses. An inmate who receives assistance from a counsel substitute who is not "sufficiently competent" has been effectively denied the due process protections established by the applicable regulations. Id. at 529.

In this case, however, appellant never claimed ineffective assistance in his administrative appeal. Even if we were to consider this contention, he presents nothing in the form of certifications from prospective witnesses, for example, or any other evidence to support his claims from which we could conclude that had different counsel substitute been assigned, the outcome of the proceedings would have been different. In addition, appellant provides no contemporaneous records to suggest, contrary to the explicit acknowledgment on the disciplinary adjudication forms, that he sought to call or confront witnesses.

The substantial evidence presented at the hearing supported the DHO's finding of guilt on the three charges and the imposed sanctions. The decision of the DOC upholding the charges was not arbitrary, capricious, or unreasonable. To the extent we have not specifically addressed any of appellant's arguments, it is because we consider them sufficiently without merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3273-17T4