**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3052-19

ASHAAN WROTEN,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 1, 2021 – Decided November 15, 2021

Before Judges Sabatino and Natali.

On appeal from the New Jersey Department of Corrections.

Ashaan Wroten, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Defendant Ashaan Wroten is presently incarcerated at Mountainview Youth Correctional Facility. He appeals from a final decision of the New Jersey Department of Corrections (Department), which found that he committed prohibited act *.005, threatening another with bodily harm or with an offense against his or her person or property, and .256, refusing to obey an order of any staff member, in violation of N.J.A.C. 10A:4-4.1(a). We affirm.

On January 10, 2020, while Wroten and other inmates were in the recreation room, a "Code 33" was sent, signifying the existence of an emergency in the prison facility requiring officer assistance. In response, prison guards ordered all inmates to lay on the floor. According to the administrative record, Wroten refused to lay still and repeatedly raised his head, prompting Sergeant E. Cascarelli[1] to issue numerous oral commands for him to cease moving and to keep his head down. According to Sergeant Cascarelli, Wroten refused to comply, and instead stated "fuck you, you spic bitch, I'll fuck you up."

As a result, Wroten was charged with the aforementioned two prohibited acts, and a third, *.306, conduct that disrupts or interferes with the security or orderly operation of a correctional facility. Wroten was served with the charges, and after an internal investigation a referral was made to a hearing officer. The

---

[1] Sergeant Cascarelli's first name does not appear in the record.

Department also obtained a mental health evaluation to assess, among other issues, Wroten's mental state at the time of the January 10, 2020 incident, his competency to participate in the disciplinary proceedings, and the effect any imposed penalty would have on his mental health. Wroten denied the charges, and he was provided with the assistance of counsel-substitute at the disciplinary hearing.

Wroten, who declined the opportunity to submit a written statement detailing his version of the January 10, 2020 events, denied through his counsel-substitute that he threatened Sergeant Cascarelli and claimed he simply told her that he was not looking at her. His counsel-substitute also informed the hearing officer that he had no previous disciplinary infractions and requested leniency.

Wroten requested witness statements from two fellow inmates, Zaire Batista and Theddues West. Batista summarily reported that Wroten "did not make any threats," and West failed to support Wroten's version of events claiming he saw "nothing at all."

The hearing officer reviewed Wroten's confidential mental health evaluation, and also offered Wroten the opportunity to confront adverse witnesses, which he declined. In addition, the court evaluated Sergeant Cascarelli's statement that during the Code 33, Wroten was given several direct

3

orders to which he failed to comply, called her the previously noted vulgar, vituperative epithet, and threatened to "fuck [her] up."

After considering all of the aforementioned documentary evidence, the hearing officer concluded Wroten committed prohibited acts *.005 and .256 and imposed the following sanctions: one hundred and twenty-five days of administrative segregation, loss of ninety-five days of commutation time, and fifteen days of recreation privileges. The hearing officer dismissed the *.306 charge, concluding it was repetitive of the *.005 and .256 offenses.

Wroten filed an administrative appeal in which he continued to maintain his innocence, contended the hearing officer misinterpreted the facts, and repeated that he had an unblemished disciplinary history adding that he "keeps to himself." He also sought leniency and a stay of all sanctions pending appeal. On January 16, 2020, the Department upheld the hearing officer's decision and concluded after reviewing the evidence submitted that the charges were "credible and the sanctions appropriate."

This appeal followed in which Wroten raises two points. First, he appears to challenge the sufficiency of the evidence presented at the disciplinary hearing arguing he would never threaten a "custody official" and certainly not a sergeant. Relatedly, he contends the proofs relied upon by the hearing officer are missing

"important elements" rendering the final decision arbitrary, capricious, and unreasonable.

Second, he raises three procedural challenges to the disciplinary proceedings. He questions why the disciplinary report related to the *.005 offense initially included the word "dismissed," which was then crossed out on the report. He also objects to the hearing officer's consideration of documents "AA1" and "C1," as he was not provided a copy of those documents. Finally, he contends he was denied the opportunity to confront adverse witnesses. We disagree with all of these arguments.

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious or unreasonable[,] or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

When reviewing a determination of the Department in a matter involving prisoner discipline, we engage in a "careful and principled consideration of the

agency record and findings." Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).  We consider not only whether there is substantial evidence that the inmate committed the prohibited act, but also whether, in making its decision, the Department followed regulations adopted to afford inmates procedural due process.  See McDonald v. Pinchak, 139 N.J. 188, 194–96 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  An inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525–46 (1975), are codified in a comprehensive set of NJDOC regulations.  N.J.A.C. 10A:4-9.1 to 9.28.

Those rights include a right to a fair tribunal, N.J.A.C. 10A:4-9.15, a limited right to call witnesses and present documentary evidence, N.J.A.C. 10A:4-9.13, a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed, N.J.A.C. 10A:4-9.24, and, in certain

6

circumstances, the assistance of counsel-substitute, N.J.A.C. 10A:4-9.12. The regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied that there was substantial credible evidence in the record supporting the Department's findings. In sustaining two of the charges, the hearing officer clearly rejected Wroten's version of events and credited Sergeant Cascarelli's statement that Wroten continued to move while ordered to lay on the ground, repeatedly raised his head in direct violation of oral commands, cursed, and threatened her with physical harm.

Further, in rejecting Wroten's version, the hearing officer considered all the evidence, including the statements from Batista and West. The hearing officer clearly discounted those statements as West failed to support Wroten's version in any measure and Batista's vague statement paled in comparison to Sergeant Cascarelli's specific account, findings fully supported by the record. In this regard, as the hearing officer noted, neither inmate directly disputed that portion of Sergeant Cascarelli's written statement that Wroten cursed at her.

In light of these findings, we find no abuse of the Department's considerable discretion. As the hearing officer explained, "threats [against correctional officers] are serious [and] put everyone at risk," and inmates are expected to follow direct orders from the prison staff. See Jacobs v. Stephens, 139 N.J. 212, 219-22 (1995) (*.005 charge upheld when inmate yelled profanities at corrections officer, including "Fuck you, I ain't giving you shit . . ." "come on, come on[,] I'll fuck you up.").

We also reject Wroten's due process challenges to the disciplinary proceedings as he was afforded all of the procedural safeguards permitted by Avant and codified in the Department's regulations. As noted, he was timely served with the charges, appointed a counsel-substitute who advocated on his behalf, and his hearing was conducted by an impartial tribunal. Wroten's counsel-substitute put forth a substantive defense, requested leniency, and presented two witness statements, all of which the hearing officer considered. Wroten was also offered the right to confront Sergeant Cascarelli but declined.

As to his specific challenges, we note that it is clear from the record that the "dismissed" notation on the disciplinary report was written in error as that word was subsequently crossed out, and the hearing officer issued a detailed decision finding Wroten guilty of the *.005 charge and dismissed the *.306

8

charge. Second, document AA1 was not a separate piece of evidence considered by the hearing officer, but a document reflecting the inventoried evidence.

Finally, C1 is Wroten's confidential mental health evaluation. See N.J.A.C. 10A:22-2.7. Wroten provides no substantive challenge to the designation of that document as confidential as inconsistent with the regulation, nor does the record indicate he requested to review the document in his administrative appeal.

More importantly, nothing in C1 competently addresses the statements he made to Sergeant Cascarelli on January 10, 2020, as the evaluator was not a percipient witness to the events in the recreation room and the hearing officer did not rely upon it for that purpose. Rather, the evaluation was considered as it related to Wroten's mental health at the time of the incident, his competence and attendant ability to understand the disciplinary proceedings, and the propriety and effect of any penalty in light of his mental health issues, none of which Wroten challenges on appeal.

To the extent we have not specifically addressed any of Wroten's other contentions, it is because we conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(D) to (E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3052-19