**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0681-20

WALEED SALEH,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted December 8, 2021 – Decided January 5, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the New Jersey Department of Corrections.

Waleed Saleh, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Travis M. Anderson, Deputy Attorney General, on the brief).

PER CURIAM

Waleed Saleh, an inmate at Bayside State Prison, appeals from the September 28, 2020 final agency decision of the New Jersey Department of Corrections (DOC) following a disciplinary hearing. The DOC upheld a hearing officer's finding of guilt and imposition of sanctions for Saleh's commission of prohibited act *.009, "misuse, possession, distribution, sale, or intent to distribute or sell, an electronic communication device, equipment, or peripheral that is capable of transmitting, receiving, or storing data and/or electronically transmitting a message, image, or data that is not authorized for use or retention," in violation of N.J.A.C. 10A:4-4.1(a)(1).[1] Saleh was also found guilty of prohibited act .754, giving or accepting money from a member of another inmate's family or another inmate's friend with an intent to circumvent any correctional facility or Departmental rule or with an intent to further an illegal or improper purpose, but does not contest his adjudication on that charge. We affirm.

We glean these facts from the record. An ongoing investigation conducted by Investigator Kerr-Duane Merrington, Special Investigations Division (SID),

---

[1] Under N.J.A.C. 10A:4-4.1(a), an inmate who commits a prohibited act "shall be subject to disciplinary action and a sanction . . . imposed by a Disciplinary Hearing Officer [(DHO)]." "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . ." Ibid.

revealed that Saleh had possessed and used a cellular telephone while housed at East Jersey State Prison (EJSP) contrary to prison regulations. In a September 17, 2020 report, Merrington detailed the investigation during which Merrington obtained and reviewed transcripts of institutional telephone calls and JPay[2] messages belonging to Saleh, discussing dates and times of cell phone calls and videos not made on the institutional phone system but rather through video call apps Google Duo (Duo), WhatsApp, and FaceTime.

The transcripts also revealed "detailed financial transactions completed through mobile payment services Venmo and Cash App." Additionally, the investigation disclosed that Saleh had on several occasions instructed family members to send money to inmate Michael Fields's girlfriend and inmate Dammen McDuffie's daughter. Based on the information gleaned during the investigation, a targeted search was conducted on August 5, 2020, which uncovered a cellular telephone and USB charger in McDuffie's possession. McDuffie had previously shared a bunk with Saleh during the times when the

---

[2] JPay is a prison service provider that offers inmates, among other things, video visitation, "a kind of Skype for the incarcerated." David Horton, Clause Construction: A Glimpse into Judicial and Arbitral Decision-Making, 68 Duke L.J. 1323, 1324 (2019).

cell phone usage and financial transactions occurred. No cell phone was found in Saleh's possession.

On September 18, 2020, a DOC officer served Saleh with the *.009 charge and, after an investigation, referred the charge to a hearing officer for further action. Saleh was offered but refused counsel substitute. After multiple postponements to gather additional evidence, the hearing began on September 25, 2020. Saleh pled not guilty to the charge and made a statement explaining that the transcript references to Duo by his seven-year-old son were misconstrued. According to Saleh, his son refers to JPay and JPay video messaging as Duo in the transcripts "because he thinks [Saleh is] at work" and "does [not] know [he is] in jail." In support, Saleh submitted witness statements from four inmates, Joseph Demauex, Vincenzo Viola, Ernest James, and Donte Hatcher.

Demauex and Viola both stated Saleh's son refers to "Jpay videos" as "Duo." Hatcher stated Saleh sends videos to his son "multiple times a day." James, Saleh's bunkmate, stated he had never "seen Saleh . . . using a cellphone in or outside the area." Saleh requested confrontation of Merrington and inquired whether any "forensic analysis" of the seized phone revealed any connections to Saleh's contacts or relatives. Merrington replied "phone not back

A-0681-20

yet." In a closing statement, Saleh admitted he was "guilty of sending money to other inmate[s' family members]" but denied possession or use of a cell phone.

In finding Saleh guilty of the *.009 charge, the hearing officer determined "[Saleh] offer[ed] no statement," and "no evidence to discredit . . . staff reports" and concluded Saleh "used a cellular telephone while housed at EJSP." Further, according to the hearing officer, "[c]onfrontation found no evidence to discredit . . . [s]taff [r]eports" and witness statements "provided no information to exonerate." Saleh was sanctioned to 120 days in the Restrictive Housing Unit, 120 days loss of commutation time, and permanent loss of contact visits.

Saleh filed an administrative appeal, asserting "[he] never possessed . . . or used [a] cellphone," "forensic evidence [has not] been reviewed," and he "[n]ever had a charge during [his] entire [eight] year[s of] incarceration." On September 28, 2020, Assistant Superintendent James Russo upheld the guilty finding and sanctions. Russo determined the hearing officer's decision "was based on substantial evidence," and "[t]here was compliance with . . . procedural due process safeguard[s]." In rejecting Saleh's plea for leniency, Russo concluded "[t]he sanctions imposed . . . [were] appropriate for the infraction." This appeal followed.

A-0681-20

On appeal, Saleh argues "the record evidence . . . is woefully incomplete, and does not satisfy the substantial evidence standard for assessing an inmate's guilt." Saleh also requests a remand for DOC "to conduct a forensic examination of the confiscated cellular phone." Following his administrative appeal, Saleh moved before this court for a limited remand to conduct a forensic examination of the phone. We denied that motion. Thus, on this appeal, we only consider Saleh's challenge to the sufficiency of the evidence.

Our role in reviewing a prisoner disciplinary decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Generally, the decision must not be disturbed on appeal unless it was arbitrary, capricious, or unreasonable, or lacked the support of "substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act.").

"'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In that regard, while we accord deference to the agency, "we will not perfunctorily

6

review and rubber stamp the agency's decision," Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003), and we must "engage in a 'careful and principled consideration of the agency record and findings,'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Nonetheless, we "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

When reviewing a prison disciplinary matter, we also consider whether the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995). Admittedly, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).

However, the inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of DOC regulations. See N.J.A.C. 10A:4-9.1 to -9.28. Those rights include

an inmate's entitlement to a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, the opportunity to present witnesses, N.J.A.C. 10A:4-9.13, and, in certain circumstances, the assistance of counsel substitute, N.J.A.C. 10A:4-9.12. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied there was substantial credible evidence in the record to support the finding of guilt. Saleh contends, "besides his seven-year[-]old son's innocent, harmless, innocuous statement concerning his request for his father to send him a 'DUO,'" there was "no credible and objective evidence connecting [him] to the electronic device." However, the transcripts of Saleh's institutional phone calls revealed several unexplained references to "dates and times of telephone calls that were not made on the institutional phone system." Saleh's contention is also belied by his mention of Duo to individuals other than his son.

Lastly, the proceedings were conducted in accordance with all applicable due process requirements, and the sanctions imposed were commensurate with

8

the severity of the infraction and authorized under N.J.A.C. 10A:4-5.1 for asterisk offenses.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0681-20