**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0938-21

ANDREW BRINING,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 6, 2022 – Decided October 27, 2022

Before Judges Haas and Gooden Brown.

On appeal from the New Jersey Department of Corrections.

Andrew Brining, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; William C. Booth, Deputy Attorney General, on the brief).

PER CURIAM

Andrew Brining, an inmate in the custody of the New Jersey Department of Corrections (DOC), appeals from the April 19, 2021 final agency decision of the DOC upholding the disciplinary hearing officer's finding of guilt and imposition of sanctions for Brining's commission of prohibited act *.803/*.002, by attempting, aiding another, or making plans to commit an assault against any person, in violation of N.J.A.C. 10A:4-4.1(a).[1] We affirm.

We glean these facts from the record. During an April 6, 2021 phone call with his father, Brining stated that "he hopes the officer on the unit gets a bullet in her head" and that "somebody kills her." Brining also stated "he hopes someone sends somebody to the officer[']s house and rapes her." The incident, which occurred while Brining was incarcerated at Bayside State Prison, was reported by Special Investigations Division Investigator J. Taylor.

The statements were the basis of an April 14, 2021 charge issued against Brining. At the time the charge was issued, Brining had already been transferred to South Woods State Prison. There, Brining was served with the charge on April 15, 2021, at which time he pled not guilty and stated "[h]e was angry."

---

[1] Under N.J.A.C. 10A:4-4.1(a), an inmate who commits a prohibited act "shall be subject to disciplinary action and a sanction . . . imposed by a Disciplinary Hearing Officer [(DHO)]." "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . ." Ibid.

A-0938-21

After an investigation, the charge was referred to a disciplinary hearing officer (DHO) for further action.

A hearing was conducted on April 16, 2021. Brining requested and was granted the assistance of counsel substitute and pled "guilty" to the charge. Brining's counsel substitute conveyed Brining's statement that he "want[ed] the max." Brining was also offered but declined the opportunity to call witnesses to testify on his behalf or to confront adverse witnesses.

After reviewing the evidence, which included Investigator Taylor's report, the recording of the phone call, and Brining's call log, and considering Brining's guilty plea, the DHO found Brining guilty. In support, the DHO stated Taylor reported that Brining "made statements [over the phone] regarding harming a female officer," Brining pled "guilty," and Brining requested "the max."

The DHO then imposed the following sanctions: 365 days in a restorative housing unit; 180 days' loss of commutation time; 365 days' loss of phone privileges; 30 days' loss of core privileges; and 30 days' loss of recreation privileges. In imposing the sanctions, the DHO noted Brining's mental health evaluation, which concluded Brining was responsible for his actions. The DHO explained that Brining had "a history of making verbal threats using the phone," and determined the purpose of the sanctions was "to deter."

A-0938-21

Brining filed an administrative appeal seeking leniency. In support, Brining reiterated he had pled guilty and "tak[en] responsibility for his action," but asserted the "sanction[s were] excessive." On April 19, 2021, South Woods State Prison Assistant Superintendent Jordan Thomas denied the appeal. In this ensuing appeal, Brining argues for the first time that the guilty finding was not supported by substantial credible evidence, the hearing and appeal were not adjudicated by the appropriate facility, and he received ineffective assistance of counsel substitute.

Our role in reviewing a prisoner disciplinary decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Generally, the decision must not be disturbed on appeal unless it was arbitrary, capricious, or unreasonable, or lacked the support of "substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act.").

"'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). We have

also defined "substantial evidence" as "evidence furnishing a reasonable basis for the agency's action." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (App. Div. 2002) (citing Zachariae v. Div. of N.J. Real Est. Comm'n., 53 N.J Super. 60, 62 (App. Div. 1958)). In that regard, while we accord deference to the agency, "we will not perfunctorily review and rubber stamp the agency's decision," Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003), and we must "engage in a 'careful and principled consideration of the agency record and findings,'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Nonetheless, we "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). The deference we afford to the DOC's decision making is supported by the DOC's important mission to ensure prison safety and security. See Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) ("Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div.

A-0938-21

1999))). We note that safety and security of the institution are undermined when inmates threaten to harm staff members.

When reviewing a prison disciplinary matter, we also consider whether the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995). Admittedly, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).

However, the inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of DOC regulations. See N.J.A.C. 10A:4-9.1 to -9.28. Those rights include an inmate's entitlement to a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, the opportunity to present witnesses, N.J.A.C. 10A:4-9.13, and, in certain circumstances, the assistance of counsel substitute, N.J.A.C. 10A:4-9.12. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the

6

due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

As the DOC points out, Brining never raised any of the issues presented on appeal to this court in his administrative appeal. Therefore, we are not required to consider any of these claims. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 293-94 (App. Div. 2001) (applying Nieder to prison cases). Nevertheless, we choose to consider Brining's claims on the merits, applying the plain-error standard of review. R. 2:10-2.

Applying these principles, we discern no basis to intervene. We are satisfied there was substantial credible evidence in the record to support the finding of guilt, most notably, Brining's guilty plea. Moreover, the proceedings were conducted in accordance with all applicable due process requirements, and the sanctions imposed were commensurate with the severity of the infraction and authorized under N.J.A.C. 10A:4-5.1 for asterisk offenses.

We also reject Brining's contention that N.J.A.C. 10A:4-11.2(d) required that the charge be adjudicated at Bayside State Prison where "the alleged violation occurred," rather than South Woods State Prison where both the disciplinary hearing and the appeal were adjudicated. N.J.A.C. 10A:4-11.2(d)

7

provides that "[a]ll appeals shall be considered by the Administrator or designee of the correctional facility in which the charge was received." Because the charge was issued to and received by Brining when he was incarcerated at South Woods State Prison, the South Woods State Prison administrator properly adjudicated Brining's administrative appeal.

Equally unavailing is Brining's claim that he received ineffective assistance of counsel substitute. While a counsel substitute must be trained as a paralegal, a counsel substitute cannot be held to the standards of knowledge or diligence of an attorney.[2] To be sure, the assistance of counsel substitute in prison disciplinary hearings is not equivalent to the constitutional right to counsel in non-institutional proceedings. See Strickland v. Washington, 466 U.S. 668, 684-98 (1984) (describing the standard for effective assistance of counsel guaranteed by the Sixth Amendment). Still, a person who assists an inmate as counsel substitute must meet a minimum level of competence in order to give meaningful effect to the applicable procedural protections. See Avant, 67 N.J. at 529 (stating that, when appropriate, a "hearing officer may choose a sufficiently competent staff member or inmate to provide assistance" (emphasis

---

[2] N.J.A.C. 10A:6-2.13 and N.J.A.C. 10A:6-2.14 provide guidelines concerning the required training to become an inmate paralegal and general provisions regarding legal assistance for inmates.

A-0938-21

added)).   To afford inmates the procedural protections they are due, a disciplinary decision may be upended if a counsel substitute's failure to provide a minimal level of competence causes the inmate prejudice.  Cf. Strickland, 466 U.S. at 687 (requiring a showing of prejudice as one of two essential elements of an ineffective assistance of counsel claim).

Without charting the precise boundaries of the minimal standard of competence required of a counsel substitute, we conclude there is no support for Brining's claim that assistance from a competent counsel substitute would have altered the outcome of this proceeding.  In that regard, Brining simply makes bald assertions of incompetence and presents nothing in the form of certifications or other evidentiary materials to support his claim.  Cf. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0938-21