**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2744-21

JULIO GRACIANO,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 28, 2023 – Decided December 15, 2023

Before Judges Smith and Perez Friscia.

On appeal from the New Jersey Department of Corrections.

Julio Graciano, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Julio Graciano, currently incarcerated at New Jersey State Prison (NJSP), appeals from a February 3, 2022 final agency decision by the New Jersey Department of Corrections (DOC), which upheld the finding of guilt and imposition of sanctions for prohibited act *.202, possession or introduction of a weapon, N.J.A.C. 10A:4-4.1(a)(1)(xvii). We affirm.

I.

On December 21, 2021, at 11:00 a.m., Corrections Officer E Parks conducted a search of Graciano's cell at NJSP. While searching the cell, Parks discovered a sharpened three-inch piece of metal inside a peanut butter jar. Parks determined the metal object was a weapon, confiscated it, and charged Graciano with prohibited act *.202, possession or introduction of a weapon, N.J.A.C. 10A:4-4.1(a)(1)(xvii). Two days later, an officer served Graciano with the charge and referred the charge to a disciplinary hearing. An investigation occurred and Graciano denied the peanut butter jar and metal weapon belonged to him. An inmate housed in an adjacent cell stated the weapon in the peanut butter jar was his and he had mistakenly given the jar to Graciano. Graciano maintained the inmate's statement was false. Graciano pleaded "no plea."

On December 30, Disciplinary Hearing Officer Simmons presided over the hearing. Graciano had requested, and was granted, counsel substitute. At

2

the hearing, counsel substitute argued the weapon did not belong to Graciano. Further, Graciano was adamant the inmate's statement admitting ownership of the weapon in the jar, which was given to Graciano by mistake, was untruthful. Counsel substitute argued Graciano's cellmate had equal access to the weapon, but he was not charged. Graciano declined to testify or call any witnesses. Simmons considered the officers' reports and photographs of the metal object which were submitted into evidence.

Simmons found substantial credible evidence to sustain a violation under *.202, possession of a weapon. The finding was based on the submitted reports and a review of the evidence. Simmons, in her written adjudication, found the object was: made of "sharpened metal" three inches in length; "concealed in a peanut butter jar"; and "found in [Graciano's] personal property." Additionally, Simmons noted that "possession of [a] weapon pose[s a] serious safety risk." Graciano was sanctioned to a two-hundred-and-fifty-day detainment in the restorative housing unit (RHU), two-hundred-and-fifty-day loss of contact visits, thirty-day loss of recreation privileges, and thirty-day loss of commissary time. In imposing the penalties, Simmons noted an "extensive" discipline history.

3

Graciano appealed from Simmons's adjudication with the DOC. He argued it was not proven that he possessed the weapon as others had access to his cell and belongings, insufficient evidence existed, his veracity was not credited, and Simmons failed to make sufficient findings to explain why or how she determined the officer's statement was credible. Graciano requested the "guilty finding be vacated, and the entire matter expunged." The Assistant Superintendent upheld the decision and sanctions after a review of the arguments presented and the hearing record.

The following arguments are raised on appeal:

> POINT I
>
> THE DISCIPLINARY HEARING OFFICER VIOLATED APPELLANT'S DUE PROCESS RIGHTS, AS SET FORTH IN AVANT V[.] CLIFFORD,[1] WHEN THE HEARING OFFICER MADE FINDINGS NOT BASED ON SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD.
>
> POINT II
>
> THE HEARING OFFICER DID NOT EXPLAIN WHY SHE FOUND THE STAFF MEMBER'S REPORT TO CONSTITUTE "SUBSTANTIAL CREDIBLE EVIDENCE."
>
> POINT III

---

[1] 67 N.J. 496 (1975).

A-2744-21

THE HEARING OFFICER DID NOT EXPLAIN WHY OR HOW SHE FOUND THE OFFICER'S WRITTEN REPORT TO BE MORE CREDIBLE THAN THE INMATE'S STATEMENT.

POINT IV

THE [RHU] SANCTION, AS IMPOSED, VIOLATE[D] THE STANDARDS OF THE ISOLATED CONFINEMENT RESTRICTION ACT ([ICRA])[2] AS IT RELATE[S] TO ISOLATED CONFINEMENT.  [(Not raised below)].

II.

Our scope of review of an agency decision is limited.  In re Stallworth, 208 N.J. 182, 194 (2011).  As we have long recognized, "Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment."  Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999).  "We [therefore] defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record."  Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

_____

[2] N.J.S.A. 30:4-82.5 to -82.11.

A-2744-21

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). But our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (first quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002); and then citing Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). Instead, "our function is to 'engage in "a careful and principled consideration of the agency record and findings."'" Ibid. (quoting Williams, 330 N.J. Super. at 204).

A hearing officer's findings must be "sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." Blackwell, 348 N.J. Super. at 122 (quoting N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 377 (1950)). We review a decision of the DOC in a prisoner disciplinary proceeding

6

to determine whether the record contains substantial evidence the inmate has committed the prohibited act, and whether in making its decision the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995).

To find an inmate guilty of a prohibited act under N.J.A.C. 10A:4-4.1, a hearing officer must find substantial evidence of the inmate's guilt. N.J.A.C. 10A:4-9.15(a). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion. See Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001).

Graciano contends the substantial credible evidence in the record does not support the finding that he possessed a weapon, and Simmons did not sufficiently explain her credibility findings. Parks's report indicated that he seized the sharpened metal object concealed in a peanut butter jar from Graciano's belongings in his cell. The weapon was then photographed for evidence. As the fact finder, Simmons was permitted to consider Parks's statement regarding the search of Graciano's belongings yielding the weapon,

A-2744-21

and to rely on the examination of photographic evidence of the object. See N.J.A.C. 1:1-15.1(b). The report and photos admitted into evidence were unrefuted.

After reviewing the reports, hearing Graciano's argument, and examining the evidence, Simmons found substantial credible evidence supported the "sharpened piece of metal" was a weapon possessed by Graciano and that it posed "serious safety risks." Simmons's findings relied on the "weapon conceal[ment]" in the jar and that there was no peanut butter "found on the weapon." She also noted Graciano had a history of weapons-related infractions. The evidence Simmons relied on in finding Graciano possessed the weapon in violation of *.202, as delineated in the written adjudication, was permissible. See N.J.A.C. 10A:4-9.24(a) (requiring the written statement of facts "include evidence relied upon, the decision[,] and the reason for the disciplinary action taken"). Graciano's argument that Simmons was required to provide greater explanation on "why or how" she found Parks's statements more credible than his is not supported by law. It is recognized, "in prison disciplinary matters[,] we have not traditionally required elaborate written decisions." Blackwell, 348 N.J. Super. at 123. Accordingly, we discern the substantial evidence in the

record supports the DOC's determination upholding the hearing officer's findings.

We find no merit in Graciano's arguments that the "officer's written statement" was not credible. Graciano avers "issues" existed as to Parks's credibility, premised on the assertions that officers make mistakes, fabricate charges, act "in a biased manner," and that Parks "has a history of writing disciplinary reports that are later proven to be false." No support for these assertions exists in the record. Simmons had offered Graciano the opportunity to confront witnesses and to address the reports, but he declined.

In his self-represented merits brief, Graciano avers his request to confront the inmate who made the self-incriminating statement was denied, although he maintains the adjacent inmate's ownership claim was false. We note Simmons's written adjudication of discipline states that Graciano was asked and declined to call any witnesses, and the form was signed by counsel substitute, affirming the statements in the report were accurate. After a review of the record, we are satisfied Graciano's adjudication of guilt was premised on substantial evidence in the record, and he was afforded due process.

Finally, for the first time on appeal, Graciano challenges the imposed sanction of two hundred and fifty days in the RHU. Graciano argues the sanction

9

violated: ICRA as against DOC standards; the "stated goals of incarceration"; permissive sanctions on a "vulnerable" and "special needs" prisoner; and "due process." The DOC opposes the newly raised issue for our consideration and posits the argument is without merit because, after the enactment of ICRA, the DOC "abolished the Administrative Segregation Unit and replaced it with the [RHU], which falls outside of ICRA." Further, the DOC argues Graciano provided no support that he has special needs, and Simmons noted in her findings that he was not suffering from any mental illness. Generally, "we do not consider issues not raised below at an administrative hearing." In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008); see also Zaman v. Fellon, 219 N.J. 199, 226-27 (2014). We therefore decline to consider Graciano's argument as it was not presented to the DOC.

To the extent not addressed, Graciano's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2744-21